**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PAMELA R. MATHEWS,

      Plaintiff,

v.                         Case No.: 6:21-cv-00808-WWB-EJK

BRYAN A. COLE,

      Defendant.

_____/

**AMENDED[1] DEFENDANT'S MOTION TO EXCLUDE**
**THE PURPORTED EXPERT OPINIONS OF PATRICIA A. MAISANO**
**UNDER FED. R. CIV. P. 37, FED. R. EVID. 702 AND *DAUBERT***

Defendant, Bryan A. Cole ("Cole"), by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 37, Fed. Rule of Evid. 702 and Daubert v. Merrell Dow Pharm., Inc., 590 U.S. 579 (1993), moves the Court for an Order excluding Dr. Patricia Maisano, the designated expert witness of Plaintiff Pamela R. Mathews' ("Plaintiff"), from offering any evidence in this action. In support hereof, Cole states as follows:

**I.**    **Introduction and Background.**

Plaintiff's retained expert in this action – "Dr." Patricia A. Maisano ("Maisano) – purports to diagnose Plaintiff with post-traumatic stress disorder ("PTSD") and Stockholm Syndrome, and concludes that Cole caused those conditions. But Maisano's expert "report" never even discloses the methodology behind her purported opinions, and falls woefully short of complying with the expert witness disclosure requirements of Fed. R. Civ. P. 26(b)(2)(B). Moreover, Maisano (a) is wildly unqualified to render her opinions, (b)

---

[1] This Motion is amended only to include the Local Rule 3.01(g) Certification, which was inadvertently omitted from the original filing (Doc. 75).

barred by state law from even making a medical diagnosis, and (c) offers conclusions that have no indicia of reliability whatsoever. The long and short of it is that Maisano's "report" is nothing more than the *ipse dixit* of an unqualified expert masquerading as a medical diagnosis that fails to comply with every applicable substantive and procedural rule.

Plaintiff initiated this action on ***May 10, 2021***. After several false starts, Plaintiff filed the operative Second Amended Complaint (the "SAC") on June 28, 2021.[2]  (Doc. 20). In that rambling pleading, Plaintiff alleges that she and Cole had a several-year romantic relationship during which Cole supposedly physically and emotionally abused Plaintiff. The gist of Plaintiff's story is that Cole committed domestic violence against Plaintiff, causing her to suffer from Post-Traumatic Stress Disorder ("PTSD") and "Stockholm Syndrome." Based upon these false accusations (and a plethora of other false and sordid allegations), Plaintiff asserts a single cause of action against Cole under Fla. Stat. § 768.35, and seeks a mind-boggling $50 million in damages.

But discovery in this action – including the numerous experts who have examined and diagnosed Plaintiff – has confirmed that Plaintiff's story is pure fiction. Plaintiff herself admitted as much as far back as 2018, when she sent Cole an email apologizing for her conduct, and in which she admitted to (a) falsely claiming that Cole gave her PTSD, and (b) having an "alcohol problem" that was the root cause of much of her poor behavior. (Doc. 34-1). In reality, Plaintiff is plagued with mental health conditions that (a) long pre-date her relationship with Cole, and (b) have nothing to do with him.

---

[2] Cole filed a Motion to Strike and For More Definite Statement as to the SAC (the "Motion to Strike"). (Doc. 26, filed July 12, 2021). On August 6, 2021, the Court entered an Order granting in part and denying in part the Motion to Strike in which the Court struck paragraphs 13-20, 25, 28, 33, 57, 71, 72 and 96 from the SAC. (Doc. 31).

On February 18, 2022, this Court entered an Order pursuant to Fed. R. Civ. P. 35 directing Plaintiff to submit to an independent medical exam by Dr. Tonia Werner, M.D. that included an "evaluation of Plaintiff's alleged cognitive, emotional and psychological issues, as well as the purported causes of Plaintiff's alleged mental and emotional injuries." (Doc. 52). Among other things, Dr. Werner's independent medical examination established that Plaintiff actually has Antisocial Personality Disorder ("APD"). See Werner Report at 17-20.[3] Plaintiff's APD has manifested itself throughout her life in a long-running list of self-inflicted traumas, perceived victimization and conflicts such as multiple divorces, arrests and lawsuits. See id. at 14-17.

One significant indicator of Plaintiff's APD is her persistent litigiousness. Like here, she is almost always the party filing suit. Among numerous other lawsuits, this actually the **third time** that she has sued Cole. The first lawsuit against Cole was filed on April 20, 2020 in Seminole County Circuit Court, in which Plaintiff alleged that Cole committed intentional infliction of emotional distress, battery and assault (the "First Frivolous Action").[4]  Plaintiff voluntarily dismissed First Frivolous Action on the eve of her deposition.

### A.    The Creation of the Original Maisano "Report."

It was during the First Frivolous Action in 2020 – well before this action was even filed – that Plaintiff retained Maisano to create a "report" opining that (a) Plaintiff suffers

---

[3] The Werner Report was filed under seal on August 25, 2022 pursuant to this Court's Order entered on August 24, 2022.  (Doc. 72).

[4] See Mathews v. Cole, Case No. 2020-CA-000935. Plaintiff's second lawsuit against Cole was filed on October 30, 2020, in which Plaintiff alleged Cole breached verbal promises to give her certain parcels of real property (the "Second Frivolous Action"). See Mathews v. Cole, Case No. 2020-CA-002641 (Seminole County Circuit Court). The Second Frivolous Action was also voluntarily dismissed shortly after inception.

from PTSD and Stockholm Syndrome, and (b) Cole caused those purported injuries. Maisano's only relevant medical experience, however, is as a registered nurse.[5]

Maisano's original retainer for her "report" was $3,500, which Plaintiff paid. Maisano then supposedly (a) reviewed eleven (11) categories of mainly vague and unspecified documents that were hand-selected and provided by Plaintiff, (b) spoke to Plaintiff on the phone for approximately thirty (30) minutes, and (c) spoke to Plaintiff's social worker, Dr. Toni Furbringer ("Dr. Furbringer"), on the telephone for an unknown period of time. Maisano Dep. at 68:19-21, 155:19-156:10. With this extremely limited universe of information, Maisano cranked out a scant five (5) paragraph "report" dated **_July 15, 2020_** that purported to diagnose Plaintiff with PTSD/Stockholm Syndrome, and opined that Cole was the cause of these supposed afflictions (sometimes the "July 2020 Report"). See Maisano Dep., Exhibit B (the July 2020 Report). Maisano then provided Plaintiff (and her then-counsel in the First Frivolous Action) with the "report" – really just a cursory memo – that was watermarked "DRAFT."

Because it was crafted for a state court proceeding before this action was even filed, Maisano's draft July 2020 Report never even attempted to comply with the procedural requirements of Fed. R. Civ. P. 26(b)(2)(B), or the substantive requirements of Fed. R. Evid. 702. The "report" contains nothing showing that Maisano (a) is qualified to render such diagnoses or causation opinions, or (b) employed a reliable methodology in reaching her conclusions. Indeed, her July 2020 "report" contains no analysis whatsoever. And because it was issued before this action was even filed, her July 2020

---

[5] Maisano testified during her deposition that she did not rely upon her undergraduate or "advanced degrees" in forming her opinions. Instead, her opinions are based entirely upon her experience as a registered nurse. Maisano Dep. at 146:10-147:17.

"report" necessarily contains no reference to or analysis of the facts at issue in this case, let alone the mountain of medical evidence adduced through discovery concerning Plaintiff's medical history.

Maisano eventually charged Plaintiff a total of $8,575.00 for a final copy of her "report." But Plaintiff failed to pay the balance due and owing to Maisano, and Maisano never authorized Plaintiff to use the (draft) "report." Plaintiff then voluntarily dismissed the First Frivolous Action.

### B.     The Lazy Reemergence of the Maisano "Report."

Fast forward to ***May 31, 2022***. That was the deadline for Plaintiff to disclose her expert reports in this action under the Court's Case Management and Scheduling Order ("CMSO"). (Doc. 29 at 1). On May 31, 2022, Plaintiff filed and served her "Expert Witness Disclosure and Report." (Doc. 56). The only supposed expert disclosed is Maisano, and Plaintiff attached her purported "report" to the disclosure as <u>Exhibit A</u>. (Doc. 56).

***Incredibly, Maisano's "report" for this case is identical to the bare-bones draft July 2020 Report that she created for Plaintiff in the First Frivolous Action. As Maisano admitted during her deposition, she did absolutely nothing substantive between July 2020 and May 31, 2022 to update, modify, amend or change the "report."*** She merely switched the addressee to Plaintiff's current counsel, and changed the date to May 31, 2022. The "DRAFT" watermark was removed, and voila, the exact same report for a subsequent lawsuit was created. Not even the typos were fixed.

As it turns out, Maisano simply reissued her July 2020 draft report after Plaintiff's counsel in this action paid Maisano the $5,075 balance that Plaintiff owed her for her "work" in 2020 during the First Frivolous Action. Maisano did absolutely nothing

substantive between issuing her draft report in July 2020 – before this action was even filed – and reissuing her "report" in this case on May 31, 2022. She got paid, and changed the addressee and the date. That's it. As she admitted during her deposition, she conducted no additional analysis whatsoever before reissuing the "report." Maisano Dep. at 70:7-15.

Because nothing changed between the draft July 2020 Report and the May 31, 2022 reissued report (sometimes hereafter the "Reissued Report"), the latter is still plagued by all of the dispositive failings of the original draft "report."[6]  As such, the Reissued Report is still fatally flawed because it failed to comply with the disclosure requirements of Fed. R. Civ. P. 26(b)(2)(B), and the substantive requirements of Fed. R. Evid. 702. Incredibly, Plaintiff did absolutely nothing to tie the Reissued Report to the facts and claim at issue in this action. This is simply not how the expert disclosure process works in federal court, and Plaintiff's failures to comply with the applicable rules – both procedural and evidentiary – requires that Maisano be excluded from offering any evidence in this action.

## II.    Maisano Must Be Excluded Because Plaintiff Failed to Comply With The Disclosure Requirements of Fed. R. Civ. P. 26(a)(2)(B).

Federal Rule of Civil Procedure 26(a)(2) requires that a party identify any witness it may use at trial to present expert testimony. See Fed. R. Civ. P. 26(a)(2)(A). This disclosure must be accompanied by *a signed written report* containing the following information:

(i)    a *complete statement of all opinions the witness will express and the basis and reasons for them*;

---

[6] Yes, Plaintiff took the extra step of attaching Maisano's resume to her expert disclosures, but that resume is still two (2) years old. (Doc. 56 at 8-12).

(ii)   the ***data or other information considered by the witness in forming them***;

(iii)   any ***exhibits*** that will be used to summarize or support them;

(iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)   a list of all other cases in which, during the previous four years, the witness ***testified as an expert witness at trial or by deposition***; and

(vi)   a statement of the ***compensation*** to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). These disclosures must be made "at the times and in the sequence that the court orders." <u>See</u> Fed. R. Civ. P. 26(a)(2)(C).

The expert disclosure requirements in Rule 26(a)(2)(B) are "intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." <u>Makas v. State Farm Mut. Auto. Ins. Co.</u>, 2017 WL 2598497, at *3 (M.D. Fla. Feb. 17, 2017) (quoting <u>OFC Fitel LLC v. Epstein, Becker and Green PC</u>, 549 F.3d 1344, 1363 (11th Cir. 2008)). "The purpose of a 'detailed and complete' expert report as contemplated by Rule 26(a) … is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." <u>Ortiz-Lopez v. Sociedad Espanola</u>, 248 F.3d 29, 35 (1st Cir. 2001); "***Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational.***" <u>Reese v. Herbert</u>, 527 F.3d 1253, 1266 (11th Cir. 2008) (emphasis added) (quotation and citation omitted).

Given the purpose of the disclosure requirement, the substance of expert report must state "the expert's anticipated opinion with sufficient specificity to allow [the opposing party] to prepare for rebuttal or cross-examination." <u>Romero v. Drummond Co.,</u>

Inc., 552 F.3d 1303, 1323 (11th Cir. 2008); see OFS Fitel, 549 F.3d at 1362-63 (disclosure violated Rule 26(a) because it "provides no meaningful analysis of [the] how and why" underlying the proffered expert opinion); Mitchell v. Ford Motor Co., 318 F. App'x 821, 825 (11th Cir. 2009) (affirming striking expert witness where the expert "did not properly disclose the necessary scientific bases for his expert opinion in a timely fashion pursuant to Rule 26 …"). ***Thus, an expert report must not be sketchy, vague, conclusory, preliminary or "so general and lacking in detail [that] it neither provides a meaningful basis for determining the substance of the expert's opinion, nor provide a fair basis for expert discovery."*** United States v. Marder, 318 F.R.D. 186, 192 (S.D. Fla. 2016) (emphasis added). And the expert report must contain more than "broad, unhelpful language that does nothing more than give a generalized summary of information that might be covered by [the expert] should he testify at trial." Hinds v. Am. Sec. Ins. Co., 2016 WL 8677901, at *2 (S.D. Fla. Dec. 7, 2016) (citing Salgado v. General Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 1998)); Glowner v. Muller-Martini Mailroom Sys., Inc., 2012 WL 276193, at *2 (M.D. Fla. Jan. 31, 2012) ("Expert reports can be stricken if they "offer conclusory opinions" and do not "contain some discussion of [the expert's] reasoning and [the] thought process that lead to the … ultimate opinions.").

Under Rule 37(c)(1), Plaintiff's failure to satisfy her expert disclosure requirements should result in the exclusion of her purported expert witness unless her violations were substantially justified or harmless. See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) … the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). This rule "provides a self-

executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion [to compel or conduct a deposition]." See id. adv. cmte. note; Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC, 845 F. Supp. 2d 1241, 1251 (M.D. Fla. 2012). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party." Mitchell, 318 F. App'x at 824.

### A.   Plaintiff Violated Her Expert Witness Disclosure Requirements.

Here, the Court clearly states in the CMSO that "[o]n or before the date set forth … for the disclosure of expert reports, [BPI] shall fully comply with Federal Rule of Civil Procedure 26(a)(2) and 26(e)." (Doc. 29 at 4). The Court also put Plaintiff on notice that "[f]ailure to disclose such information may result in the exclusion of all or part of the testimony of the expert witness." Id. Nevertheless, instead of even attempting to comply with Rule 26, Plaintiff simply took Maisano's draft July 2020 Report created for a completely different legal proceeding, stamped a new date on it, and reissued it for use in this action. This hasty repurposing of the patently-deficient 2020 "report" fails to check-off virtually all of the boxes required under Rule 26.

Like passing a math test in school, an expert witness must "show her work" for her opinions to be admissible. Maisano, however, wholly failed to provide "sufficient specificity" in the Reissued Report. Romero, 552 F.3d at 1323. Rule 26(a)(2)(B) required Maisano to include in her report (i) a complete statement of all opinions she will express, **and the basis and reasons for them**, and (ii) **the facts or data she considered in forming her opinions**. See Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Maisano's opinions, however, do not contain the "basis and reasons" backing them up, or the "facts and data" she supposedly considered before reaching her conclusions.

Maisano's purported opinions are exactly the kind of conclusory, "vague and sketchy" opinions that the disclosure requirements of Rule 26 are designed to prevent. For instance, Maisano (wrongly) states that "[o]ne of the well known forms of PTSD is called Stockholm Syndrome." (Doc. 56 at 6). But she provides zero authority for this purported manifestation of PTSD (because, as discussed below, it is patently wrong). She makes a similar conclusory assertion in the same paragraph by boldly proclaiming without citation to any source or authority that "[t]he providing of money, then the threat of refusing funds for basic things such as a place to live can often be seen in most cases." Id. Her brief report is also littered with unsourced vague hypotheticals such as "an example of this might be," "it is rare for a victim to report," "they often give up" and "they slowly lose their identity, their dignity and their power." What authorities support these assertions? What are the actual statistics supporting these assertions?  How does it inform her analysis?  We do not know because Maisano never says. The Reissued Report thus improperly "contains no details that would allow one to refer to the relevant studies, research or sources to check, test, affirm or rebut [Maisano's] factual assertions and ultimate conclusions." Moore v. GNC, Holdings, Inc., 2014 WL 12684287, at *4 (S.D. Fla. Jan. 24, 2014).

Worse still, there is no explanation whatsoever as to how or why Maisano arrived at her diagnosis and causation opinions. There is no mention whatsoever of any diagnostic criteria, or how she applied such criteria. To be sure, Maisano provides no reasoning or analysis whatsoever for how she concluded that (a) Plaintiff has PTSD and Stockholm Syndrome, (b) how she distinguished PTSD and Stockholm Syndrome from other mental health disorders, and (c) how she determined that Cole was the direct cause

of those purported conditions, as opposed to the countless other traumas in Plaintiff's life. So contrary to the express requirements and animating purpose underlying Rule 26, Cole and this Court are left to guess about the basis and reasons for her opinions.

And even though Maisano lists some vague categories of documents that she supposedly reviewed as part of her engagement – a review which predated this case – merely listing those records fails to provide Cole with any clue about the purported methodology that Maisano may have used in reaching her conclusions. Maisano does not even cite to any specific records in her narrative, so it is entirely unclear what she supposedly reviewed that supports her opinions. See Dixon v. Brown, 2021 WL 2099166, at 3-4 (S.D. Ill. Mar. 30, 2021) (precluding expert from offering PTSD opinion when expert failed to provide methodology used in reaching conclusions other than stating that the expert reviewed the plaintiff's medical records). This is an especially grave violation of Rule 26 because many of these document descriptions are worthless; she claims to have reviewed "numerous emails," "numerous text messages," "medical records" and "lawsuit documents" (which, given the timing, obviously could not relate to this lawsuit) without specifying what these communications, records and documents are, or even how many. And of course, Maisano never even tries to explain why the records she supposedly reviewed are medically sufficient to allow her to diagnose Plaintiff with PTSD and Stockholm Syndrome.

The complete absence of any methodology, analysis or substantive information required by Rule 26 forced Cole to depose Maisano in Pennsylvania. During the deposition, Maisano was asked "[w]hen you prepared your expert report what methodology did you use to arrive at your conclusions." Maisano answered that she used

the fourth and fifth editions of the Diagnostic and Statistical Manual of Mental Disorders (commonly referred to as the DSM-4 and DSM-5). But Maisano also admitted that she never mentioned those "bibles" of mental health diagnosis in her report, and never explained in her report how she applied their teachings to the facts of this case to reach her conclusions. Maisano Dep. at 79:22-80:14.[7] Plaintiff's counsel then helpfully sealed Maisano' fate here by asking her why she didn't mention the DSM-4 or DSM-5 in her report. Maisano answered that she "***just didn't think anybody would be interested in having all of that information.***" Id. at 151:25-52:9 (emphasis added). Simply incredible. "All of that information" is precisely what is ***required*** under Rule 26, and serves extremely important purposes. Plaintiff's total failure to include any of "that information" in the Reissued Report – despite having it for nearly two (2) years before reissuing it in this action – requires that she be excluded as a witness under Rule 37. See Mitchell, 318 F. App'x at 825 (affirming district's decision striking expert witness where the expert "did not properly disclose the necessary scientific bases for his expert opinion …").

At bottom, the Reissued Report contains nothing more than impermissible conclusions devoid of the necessary "how and why" underlying Maisano's purported opinions. OFS Fitel, 549 F. 3d at 1363. As such, the self-executing sanction of Rule 37(c)(1) applies, and BPI "is not allowed to use … [Maisano] to supply evidence" in this case. Fed. R. Civ. P 37(c)(1); Companhia Energetica Potiguar v. Caterpillar Inc., 2016 WL 11547499, at *5 (S.D. Fla. June 13, 2016) ("Courts in this Circuit routinely strike expert

---

[7] This also makes no sense. First, DSM-4 and DSM-5 treat PTSD differently. See Exhibit "B" (showing the differences between how the editions treat PTSD). And second, Stockholm Syndrome is not recognized as a mental health disorder by the American Psychiatric Association, and thus does not even appear in the DSM-4 or DSM-5.

affidavits or preclude expert testimony for a failure to meet the requirements of Federal

Rule 26.") (quoting and citing numerous cases).

The Reissued Report also fails to include much of the rest of the information

required under Rule 26(a)(2).

- <u>First</u>, in undeniable violation of Rule 26, the Reissued Report is not signed. Fed. R. Civ. P. 26(a)(2)(B).

- <u>Second</u>, it is unclear what exhibits, if any, will be used to summarize or support Maisano's purported expert opinions. The Reissued Report does not contain or explicitly refer to any marked exhibits. <u>See</u> Fed. R. Civ. P. 26(a)(2)(B)(iii).

- <u>Third</u>, the Reissued Report does not contain "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). As discussed below, Maisano's C.V. states that she has "provided expert testimony for approximately" 20 years, but does not identify a single case in which she provided such testimony, much less any case in which she made the diagnoses and causation opinions she launches in this action.

- <u>Fourth</u>, the Reissued Report does not contain "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(vi).

These extensive violations are significant, as "[t]his type of information is required

in the expert's written report precisely because it is important information necessary to

attorneys in preparation for deposing the expert." <u>OFS Fitel</u>, 549 F.3d at 1362[2];

<u>Bizrocket.com, Inc. v. Interland, Inc.</u>, 2005 WL 6745904, at *1 (S.D. Fla. Aug. 24, 2005)

(excluding expert because, among other reasons, the expert report failed to indicate the

name of the courts in which the witness previously testified). The Reissued Report thus

violates the mandatory disclosure requirements of Rule 26(a)(2), and should be excluded

under the self-executing sanction of Rule 37(c)(1).

> **B.   *Plaintiff's Failure to Comply With Rule 26(a) was not Substantially Justified or Harmless.***

Plaintiff's seemingly deliberate failure to comply Rule 26(a)(2)(B) and the Court's CMSO is also not substantially justified or harmless. Discovery conduct "is substantially justified for purposes of Rule 37 if it is a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." Perez-Santiago v. Volusia County, 2009 WL 8523925, at *1 (M.D. Fla. Oct. 30, 2009) (quotations and citations omitted). But there is no genuine dispute about (a) what Rule 26 and the Court's CMSO required, and (b) how the Reissued Report falls far short of complying with those requirements. Indeed, it is impossible for Plaintiff to justify the fatal flaws in the Reissued Report given that she possessed it for nearly two (2) years before dusting it off and disclosing it in this action.

Nor are Plaintiff's violations of Rule 26(a)(2) harmless. Among other things, the numerous defects in the Reissued Report forced Cole to depose Maisano with no understanding about the actual substance of her testimony. Among other things, it was only through this deposition that Cole learned about Maisano's supposed use of the DSM-4 and DSM-5. And because Cole only learned of this purported analysis during the deposition, he was prevented from effectively examining her about it. Cole thus had no opportunity to truly investigate and rebut Maisano's purported methodology because of the absence of information that should have been included in the Reissued Report in the first place. See Ciomber v. Cooperative Plus, Inc., 527 F.3d 635, 643 (7th Cir. 2008) (deficient report that forced a deposition of the proffered witness was not harmless).

Nor does the fact that the deficient Reissued Report forced Cole to depose Plaintiff render those deficiencies harmless. "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony" because "[t]he

purpose of Rule 26(a)(2) is to provide notice to opposing counsel-before the deposition-as to what the expert witness will testify and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony." Moore, 2014 WL 12684287, at *4 (quoting Ciomber, 527 F.3d at 642). Indeed, "[a]llowing parties to cure a deficient report with later depositions would further undermine a primary goal of Rule 26(a)(2): to shorten or decrease the need for expert depositions." Ciomber, 527 F.3d at 642. Consequently, "the need for expert depositions would increase if they could use deposition testimony to provide information they should have initially included in their Rule 26(a)(2) report." Id.; see Jackson v. Johnson & Johnson, 2022 U.S. Dist. LEXIS 6290, at *8 (N.D. Ga. Jan. 12, 2022) (same); Bolton v. WJV Mississippi, Inc., 2011 WL 206171, at *4 (S.D. Ala. Jan. 20, 2011) (explaining that it is not the non-disclosing party's burden to ferret out what the disclosing party omitted in violation of Rule 26) (citing cases).

In the end, Plaintiff's failure to comply with the expert witness disclosure requirements of Rule 26(a)(2)(B) and the CMSO are egregious, unjustified and prejudicial. Under Rule 37(c)(1), Plaintiff should be precluded from using Maisano as a witness to supply evidence in this case. The Court can stop here if it wants, as Plaintiff's Rule 26(a) violations, alone, are enough to exclude Maisano as a witness in this case. But she should alternatively and/or additionally be excluded under Fed. R. Evid. 702 and Daubert.

III.   **Maisano Must Be Excluded Under Fed. R. Evid. 702 and *Daubert*.**

Even if the flawed Reissued Report slides past exclusion under Rule 37, Maisano should still be precluded from testifying at trial under Rule 702 and Daubert. The

admissibility of expert testimony is governed by Federal Rule of Evidence 702. The rule provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon **sufficient facts or data**, (2) the testimony is the **product of reliable principles and methods**, and (3) the witness has applied the principles and methods reliably **to the facts of the case**.

Fed. R. Evid. 702. (emphasis added). Admissibility under Rule 702 entails a three-part inquiry. The Court must consider whether (1) "the expert is qualified to testify competently regarding the matters he intends to address," (2) "the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993)," and (3) "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (quotation and citation omitted). In other words, Plaintiff must establish that (a) Maisano is qualified to opine as an expert about whether Plaintiff has PTSD and Stockholm Syndrom, and that Cole was the cause of those alleged conditions, (b) Maisano's proposed testimony is reliable; and (c) Maisano's proposed testimony is relevant and helpful to the trier of fact.

The Court must act as a gatekeeper to ensure that Rule 702's requirements are met. Daubert, 509 U.S. at 589. The Court's gatekeeping role requires it to undertake an exacting analysis of the proffered expert testimony "to ensure that speculative, unreliable

expert testimony does not reach the jury." <u>McCorvey v. Baxter Healthcare Corp.</u>, 298 F.3d 1253, 1256 (11th Cir. 2002). It is Plaintiff's burden to show that Maisano's testimony satisfies all three (3) prongs of Fed. R. Evid. 702 and <u>Daubert</u>. <u>Hendrix ex. rel. G.P. v. Evenflo Co., Inc.</u>, 609 F.3d 1183, 1194 (11th Cir. 2010). "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to meet that burden, and Rule 702 "requires more than the *ipse dixit* of the expert." <u>Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.</u>, 402 F.3d 1092, 1111 (11th Cir. 2005) (quotation and citation omitted).

### A. *Maisano is Unqualified to Opine on PTSD, Stockholm Syndrome or Causation.*

Maisano's is simply unqualified to medically diagnose PTSD and Stockholm Syndrome, let alone take those purported diagnoses a step further by forensically determining the cause of those conditions. Maisano's C.V. shows that her education includes (a) completing a registered nursing program, (b) a B.S. in Behavioral Science from Wilmington College, (c) an MS in Assessments and Evaluations Science, and (d) a "DHSc" (sic), which is apparently a "Doctorate in Health Science." (Doc. 56 at 9). Although her post-graduate degrees are not confidence-inspiring – they were purchased from Sheffield State University, a notorious online diploma mill that does not require any academic performance – none of her academic "credentials" were relied upon in reaching her conclusions. Nor do any of her certifications. Instead, as she made clear during her deposition testimony, ***Maisano's opinions are based solely upon her experience as a registered nurse and a purported "expert witness."*** <u>Maisano Dep.</u> at 146:10-147:17.[8]

---

[8] During her deposition, Maisano could not identify a single case in which she was qualified as an expert, much less as an expert in PTSD. <u>Maisano Dep.</u> at 83:16-84:16.

Experience as a registered nurse, however, is – as a matter of law – not enough to qualify Maisano to give the opinions expressed in the Reissued Report. See United States v. Crosby, 713 F.2d 1066 (5th Cir. 1983) (affirming that "only physicians could qualify as diagnostic experts concerning this medical condition."); Robinson v. Dibble, 613 F. App'x 9, 14 (2d Cir. 2015) (affirming trial court's holding that a nurse practitioner was not qualified to diagnose PTSD); Nemeth v. Citizens Fin. Group, 2012 WL 3278968, at *6 (E.D. Mich. Aug. 10, 2012); Jackson v. Bayou Indus., 1995 WL 143538, at *1-2 (E.D. La. Mar. 29, 1995). And the law in this Circuit is clear that an expert must be a medical doctor or psychologist to diagnose PTSD. In "every known Eleventh Circuit case in which PTSD diagnosed, the diagnoses was made by a medical doctor or psychologist [] … a wealth of authority rejects the idea that [a licensed professional counselor] is qualified to render such an opinion." Thomas v. Austal, USA, L.L.C., 2011 WL 13248663, at *2 (S.D. Ala. Dec. 20, 2011) (quotation omitted). Maisano is neither. Nothing has changed since Thomas, and no law suggests that a registered nurse gets more deference than a licensed professional counselor when it comes to diagnosing PTSD.

But even if experience alone were enough to qualify Maisano to render an opinion diagnosing Plaintiff with PTSD – which it is not – Maisano's experience still falls well short of clearing the qualification hurdle. As for that experience, Maisano became a registered nurse in 1972 after receiving her license post-graduation from the Saint Francis School of Nursing in Delaware. That license apparently permits her to practice nursing in all fifty (50) states through unspecified reciprocity agreements or laws. She also is a licensed registered nurse in Pennsylvania, where she currently resides. (Doc. 56 at 9). As for her nursing-tangent experience, her C.V. shows that her "Key Experience" lies in elder care,

guardianship and case management. (Id. at 8). She also purports to have "provided expert testimony for approximately 20 years," but – consistent with her other disclosure failures discussed above – completely fails to identify the cases in which she supposedly provided that testimony, or the subject matter of that testimony.[9]

There is simply no "fit" between Maisano's experience and her purported diagnostic and causation opinions. See Bachmann v. Hartford Fire Ins. Co., 323 F. Supp. 3d 1356, 1359 (M.D. Fla. 2018) (explaining that there must be a "fit" with the expert's source of expertise and the subject matter of the witness' proposed testimony). Maisano has no experience as a psychiatrist or psychologist, and appears to have no forensic training or experience whatsoever. There is also nothing in the record suggesting that Maisano was ever trained in diagnosing PTSD and Stockholm Syndrome, or that she otherwise has any specialized knowledge of these conditions. Although she has spent roughly fifty (50) years as a registered nurse, Maisano does not come anywhere close to explaining how that experience qualifies her to actually diagnose Plaintiff's purported mental condition(s), or opine on what supposedly caused those conditions. See, e.g., Cano v. 245 C & C, LLC, 2021 WL 684188, at *3-5 (S.D. Fla. Feb. 19, 2021) (holding that a proffered expert with a master's degree in psychology was unqualified to give a diagnostic opinion on alleged psychological and emotional injuries).

Even if she spent considerable time *treating* psychiatric patients, nothing suggests any extensive experience (much less ability) in *diagnosing* PTSD, Stockholm Syndrome or the causes of those afflictions. ***Treating individuals with these conditions is a completely different animal than diagnosing these conditions, and/or determining***

---

[9] Maisano has never been deposed in a federal court case, and has seemingly never been qualified as an expert by any federal court. See Maisano Dep. at 12:16-13:14; 105:21-25.

*their causes.* Indeed, even giving Maisano all the benefit of the doubt by assuming that she was significantly involved in the assessment and treatment of these conditions, that still does not qualify her to actually diagnose those conditions, much more pinpoint their causes. See, e.g., Schaefer-Condulmari v. U.S. Airways Group, LLC, CIV.A. 09-1146, 2012 WL 2920375, at *5 (E.D. Pa. July 18, 2012) (holding that medical doctor who treated patients with PTSD was unqualified to render opinion on diagnosis or causation of PTSD); Lee v. Nat'l R.R. Passenger Corp. (Amtrak), 2012 WL 92363, at *3 (S.D. Miss. Jan. 11, 2012) ("[T]reating someone for PTSD is an altogether different matter than *diagnosing* it. And because her [experience] demonstrate[s] no expertise in the area of PTSD diagnosis, the defendants' motion must be granted in that it seeks to foreclose her from testifying that she diagnosed [Plaintiff] as suffering from PTSD.").[10]

To be sure, that Maisano even purports to have diagnosed PTSD and Stockholm Syndrome in *any* context is incredible in its own right. PTSD (and Stockholm Syndrome to the extent it is a real mental health condition) is a medical diagnosis that a registered nurse is simply unqualified to make in federal court. See Crosby, 713 F.2d at 1076-77 (5th Cir. 1983) (PTSD is a medical diagnosis that only physicians can make). Indeed, neither Delaware nor Pennsylvania permit a registered nurse to make *any* medical diagnosis, let alone diagnose a mental health condition. See Del. Code Ann. tit. 24, §

---

[10] Nor did Maisano's deposition testimony reveal a deep well of experience in diagnosing PTSD, Stockholm Syndrome or determining their causes within any certainty. Maisano testified that she serves as "a witness for people." By this, she meant that she was a witness "with regard to guardianship and contested Powers of Attorney." Maisano Dep. at 9:12-18. And while Maisano has testified in court approximately fifty (50) times, it was always in the context of a guardianship proceeding. Id. at 12:16-14:14. Even assuming that her guardianship experience exposed her to individuals with PTSD and/or Stockholm Syndrome, that does not somehow imbue her with the experience necessary to medically diagnose those specific mental health conditions, or isolate their causes. Nothing in her deposition testimony "fills in the blanks" from the Reissued Report by showing that Maisano's experience qualifies her to give the opinions in the Reissued Report.

1902(t)(9); 63 Pa. Stat. Ann. § 218.2(b).[11]  It is thus impossible – if not illegal – for Maisano to have the actual clinical experience necessary to qualify her as an expert in diagnosing PTSD or Stockholm Syndrome.

So too for Maisano's conclusory assertion that Cole caused her PTSD. (Doc. 56 at 7). There is no "fit" between her experience and her purported opinion. She is not a forensic psychiatrist or forensic psychologist, and has no training or experience in either discipline. Nor is there anything in the record suggesting that she even knows how to isolate the cause of PTSD, especially when it comes to distinguishing between several different potential "triggers." More fundamentally, if she cannot diagnose the condition, then she necessarily cannot pinpoint what caused the purported condition. Maisano's lack of qualifications to reliably (a) diagnose PTSD and/or Stockholm Syndrome, and (b) identify the supposed cause of those conditions means that Plaintiff cannot satisfy the first prong of Daubert, and dooms Plaintiff's attempt to slip Maisano's opinions into evidence.

### B.    Maisano's "Methodology" is Unreliable.

When – as here – the purported expert is relying primarily upon her purported experience, "then the witness must explain *how* that experience leads to the conclusion reached, *why* that experience is a sufficient basis for the opinion, and *how* that experience is reliably applied to the facts." U.S. v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004) (emphasis added) (quoting Fed. R. Evid. 702 adv. cmte. note).

---

[11]  See  also  https://www.dos.pa.gov/ProfessionalLicensing/BoardsCommissions/Nursing/Pages/Nursing-Guide.aspx (last visited Aug. 17, 2022) (Pennsylvania Department of State definitively stating that "RNs may not perform medical diagnosis.").

Another important part of the reliability inquiry is the requirement of an "analytical 'fit' between the methodology used and the conclusions drawn." <u>Rider v. Sandoz Pharm. Corp.</u>, 295 F.3d 1194, 1197 (11th Cir. 2002) (quoting <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997)). As a result, "*a court may not admit evidence when there is simply too great an analytical gap between the data and the opinion proffered.*" <u>Id.</u> (emphasis added) (quoting <u>Joiner</u>, 522 U.S. at 146).

Maisano's Reissued Report is a case study in unreliability under Rule 702 and <u>Daubert</u>:

*First* and foremost, for this Court to properly exercise its gatekeeping role, Maisano had to actually disclose her diagnosis and causation methodologies. But she never did so. That failure is dispositive here because Maisano made it unequivocally clear that she was relying strictly upon her experience to form her diagnoses and causation opinions. Yet Maisano never even attempted to (a) explain *how* that experience leads to her conclusion, (b) *why* that experience is a sufficient basis for her opinions, and (c) *how* that experience is reliably applied to the facts of this case. <u>Frazier</u>, 387 F.3d at 1261. Maisano's complete failure to comply with Eleventh Circuit precedent is fatal.

*Second*, that failure also highlights another dispositive flaw in Maisano's Reissued Report: it is completely divorced from the facts of this case. Maisano did not explain *how* her experience is reliably applied to the facts of this case *because she never bothered examining the facts of this case in the first place*.[12] <u>Id.</u> Maisano admitted during her

---

[12] The undeniable absurdity of Maisano's opinion is captured by the fact that before and during her deposition, Maisano was presented with a mountain of evidence adduced in this action showing Plaintiff's medical history that Maisano was completely unaware of when she wrote the July 2020 Report. She was also made aware of Plaintiff's own email to Cole in 2018 – years before she retained Maisano in the First Frivolous Action – admitting that their problems were caused by her drinking, and that she (supposedly) had PTSD well before she met Cole. Despite all of that, Maisano actually doubled down on her supposed diagnoses and causation opinions. Wait, what?  So Maisano *absolutely believes* everything Plaintiff told

deposition that she never updated the July 2020 Report before reissuing it in this action on May 31, 2022. Maisano did not (a) review any additional medical records or other documents, (b) examine, evaluate or speak with Plaintiff or anybody else about Plaintiff's mental state, or (c) request or review any of the pleadings, depositions, or any other evidence adduced in this action before reissuing her July 2020 Report. She did absolutely nothing.

Because the Rule 702 mandates than an expert's opinion be based upon "sufficient facts or data" that is reliably applied to the facts, the expert's opinion must necessarily be based upon and tied to the facts of the case in which the expert is proffered. Fed. R. Evid 702(b). But here, all of the information reviewed by Maisano was provided one (1) year before this action was even filed. This extremely limited universe of information, plus Maisano's total failure to tie her diagnoses and causation opinions to the facts and evidence adduced in this action, means that there is simply too great of an "analytical gap" between that limited data and the opinions offered, making her opinions inherently speculative and unreliable. See, e.g., Smith v. Ill. DOT, 936 F.3d 554, 557 (7th Cir. 2019); Cano, 2021 WL 684188, at *13; Chen v. Mnuchin, 2020 U.S. Dist. LEXIS 180574 (N.D. Ill. Sep. 30, 2020); Babbs v. Block, 2017 U.S. Dist. LEXIS 83587, at *16-19 (W.D. Mo. June 1, 2017); Caruso v. Bon Secours Charity Health Sys., 2016 U.S. Dist. LEXIS 104067 (S.D.N.Y. Aug. 5, 2016); Amos v. Rent-A-Center, 2001 WL 3605915, at *3 (S.D. Fla. 2001).

---

her and the self-selected materials Plaintiff provided to her in 2020, but Maisano *does not believe* Plaintiff's pre-existing admissions, and lends no importance to the medical history that Plaintiff intentionally hid from her. That makes zero sense, especially given that Maisano never even examined Plaintiff.  There is simply no basis – whether in the record, or the world of real medicine/science – supporting Maisano's self-serving, subjective and selective approach to what facts and data she is willing to credit.

*Third*, Maisano's opinion that Cole *caused* her PTSD/Stockholm Syndrome is unreliable because she did not employ any recognized methodology in reaching that conclusion. The generally accepted method for determining medical causation – including PTSD – is by performing a differential diagnosis under which alternative causes of the condition are eliminated. See Tardif v. City of New York, 344 F. Supp. 3d 579, 600-03 (S.D.N.Y. 2018); El Ansari v. Graham, 2019 WL 3526714, at *7 (S.D.N.Y. Aug. 2, 2019); Miller v. Union Pac. R.R. Co., 2021 WL 949545, at *9 (D. Neb. Mar. 12, 2021); Ford v. Carnival Corp., 2010 WL 9116184, at *3 (S.D. Fla. Mar. 4, 2010). **The Reissued Report contains no evidence that Maisano conducted a differential diagnosis**.

Indeed, Maisano provides no analysis about how she reached her causation conclusion other than to state that the extremely limited set of records she reviewed did not reveal any unspecified "episodes" or medication for depression and anxiety before February 2017. (Doc. 56 at 7). Aside from being factually wrong,[13] this is not a reliable method for determining causation because it does nothing to rule out other potential causes of Plaintiff's purported PTSD. If Plaintiff supposedly began having these "episodes" – whatever that means – and taking this medication during her relationship with Cole, that does not mean that Cole was the cause of the conditions that led to the "episodes" and prescriptions. This is common sense. If one takes an aspirin for a headache at work, that does not mean that his or her spouse caused the headache. It is also one reason why courts hold that "[t]emporal proximity is generally not a reliable indicator of a causal relationship." Guinn v. AstraZeneca Pharms. LP, 602 F.3d 1245, 1254 (11th Cir. 2010); see Wingster v. Head, 318 F. App'x 809, 815 (11th Cir. 2009);

---

[13] Plaintiff, in fact, has used and abused prescription drugs for much of her life, and well-before she ever met Cole.  See Werner Report at 3-7, 14-15.

Lowery v. Sanofi-Aventis LLC, 2021 WL 872620, at *14-15 (N.D. Ala. Mar. 9, 2021). Maisano's causation opinion is thus nothing more than her own impermissible *ipse dixit*, and must be excluded. Cook, 402 F.3d at 1111.

    *Fourth* and finally, Maisano's opinion that Plaintiff has Stockholm Syndrome is unreliable because her description of the condition is simply wrong, and she did not use any reliable methodology for making that determination. Maisano states that "[o]ne of the well known forms of PTSD is called the Stockholm Syndrome." (Doc. 56 at 6). No, it is not. As explained in the expert report of Dr. Lawrence Amsel, MD, MPH, Stockholm Syndrome is neither a "form" of PTSD, nor is it recognized as an independent mental disorder by the DSM-5, or the International Classification of Diseases. See Amsel Report at 10;[14] Exhibit "A" (the DSM-5's (a) table of contents, (b) discussion of PTSD, and (c) index showing no mention of Stockholm Syndrome). What Maisano has done is thus purport to diagnose a specific form of PTSD – Stockholm Syndrome – that simply does not exist. Whatever Stockholm Syndrome may be, modern medicine does not recognize it as a "form" of PTSD.[15] And given the fact that the DSM does not recognize Stockholm Syndrome at all – either independently or as a "form" of PTSD – Maisano failed to identify any reliable methodology for (a) diagnosing Plaintiff with that condition, or (b) attributing its cause to Cole. At bottom, Maisano's medical error fundamentally infects her entire PTSD and causation opinions, and requires that she be excluded.

---

[14] Like the Werner Report, the Amsel Report was filed under seal on August 25, 2022 pursuant to this Court's Order.  (Doc. 72).

[15] It is also worth noting that Maisano's description of Stockholm Syndrome is wrong. It was not named after the Patty Hearst kidnapping. It was, instead, named after a prolonged bank robbery that occurred in Stockholm, Sweden in 1973. It is difficult to find any reason to consider Maisano's diagnoses reliable when she even cannot get the basics right about the conditions she is supposedly diagnosing.

## V.     Conclusion.

For all of the foregoing reasons, Cole respectfully requests that the Court exclude Dr. Patricia A. Maisano from testifying, or otherwise offering any evidence in this action.

### Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), counsel for the movant (Colin Baker, Esq.) certifies that on August 23, 2022 he conferred by telephone with counsel for Plaintiff (Duncan G. Byers, Esq.).  Plaintiff opposes the relief requested herein.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 1st day of September, 2022, I electronically filed the foregoing **Defendant's Amended Motion to Exclude the Purported Expert Opinions of Patricia Maisano Under Fed. R. Civ. P. 37, Fed. R. Evid. 702 And** *Daubert* with the Clerk of the Court by using the CM/ECF system, which will send an electronic copy to the following:

>Duncan G. Byers, Esquire
>Patten, Wornom, Hatten &
>Diamonstein, L.C.
>12350 Jefferson Avenue, Suite 300
>Newport News, Virginia 23602
>Email: dbyers@pwhd.com
>          cveals@pwhd.com
>*Counsel for Plaintiff*

>**GREENBERG TRAURIG, P.A.**
>450 South Orange Avenue, Suite 650
>Orlando, Florida 32801
>Telephone:   (407) 420-1000
>Facsimile: (407) 420-5909
>Email: spiveyw@gtlaw.com
>          bakerco@gtlaw.com
>          nef-iws@gtlaw.com
>          FLService@gtlaw.com
>*Counsel Defendant Bryan A. Cole*

>By: */s/ I. William Spivey, II*
>     I. William Spivey, II, Esquire
>     Florida Bar No. 701076
>     Colin S. Baker, Esquire
>     Florida Bar No. 0066352