**Casey, Shannon E. (Para-Orl-LT)**

**From:** Duncan Byers <dbyers@PWHD.com>
**Sent:** Friday, August 20, 2021 5:13 PM
**To:** Spivey, I. William (Shld-Orl-LT)
**Cc:** Casey, Shannon E. (Para-Orl-LT); Jeannie Oxley; Baker, Colin (Shld-Orl-LT)
**Subject:** RE: Cole / Mathews
**Attachments:** Plaintiff's Resp. to Def's 1st RPDs to Plaintiff.pdf; Plaintiff's Rsp to Def's 1st Roggs.pdf; Plaintiff's Notice of Service of Responses to Irrogs and RPDs 8.20.2021.pdf

**Importance:** High

All - please see attached Plaintiff's Discovery Objections and Responses. As I noted in my earlier email, I am still organizing the documents for response and will provide those as soon as possible. There are some Interrogatory responses that will be supplemented as well.

Duncan G. Byers, Partner

PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.

12350 Jefferson Avenue, Suite 300

Newport News, Virginia 23602

Direct: 757-223-4474

Fax: 757-249-3242

Email: dbyers@pwhd.com

Website: https://urldefense.com/v3/__http://www.pwhd.com__;!!DUT_TFPxUQ!UeN8jLhvalg_Tz4QkRG-6ZwWzzUwbQPK29yTzxIp_0Ea-64rOHsICXty8KO-og$

https://urldefense.com/v3/__https://www.pwhd.com/duncan-g-byers__;!!DUT_TFPxUQ!UeN8jLhvalg_Tz4QkRG-6ZwWzzUwbQPK29yTzxIp_0Ea-64rOHsICXstvDHPOQ$
https://urldefense.com/v3/__https://www.linkedin.com/in/duncangbyers/__;!!DUT_TFPxUQ!UeN8jLhvalg_Tz4QkRG-6ZwWzzUwbQPK29yTzxIp_0Ea-64rOHsICXsAl6ORvQ$

Selected for the 27th Ed. of Best Lawyers in America -
Intellectual Property Litigation

-----Original Message-----
From: Duncan Byers
Sent: Friday, August 20, 2021 4:04 PM
To: SPIVEYW@gtlaw.com
Cc: caseysh@gtlaw.com; Jeannie Oxley <Joxley@pwhd.com>; bakerco@gtlaw.com
Subject: RE: Cole / Mathews



COMPOSITE EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

PAMELA R. MATHEWS,

Plaintiff,

v. Case No.: 6:21-cv-00808-WWB-EJK

BRYAN A. COLE,

Defendant.

______________________________/

**RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST**

**SET OF INTERROGATORIES TO PLAINTIFF, PAMELA R. MATHEWS**

Plaintiff, Pamela R. Mathews ("Mathews") by and through her undersigned counsel and pursuant to Fed. R. Civ. P. 33, hereby objects and responds to Defendant, Bryan A. Cole's ("Cole") interrogatories as follows.

## I. PLAINTIFF'S OBJECTIONS TO "INSTRUCTIONS" AND "DEFINITIONS" FOR ALL OF DEFENDANTS INTERROGATORIES

Plaintiff objects to Defendant's purported Instructions in that any instructions for responding to discovery requests are contained within and governed by applicable law, the Federal Rules of Civil Procedure, and Local Rules. Plaintiff's responses will be made consistent with and as required by those laws and Rules and not definitions and instructions promulgated by Defendant. Plaintiff further objects to Defendant's purported Instructions as any interrogatory is required to be internally and independently both consistent and complete. To the extent that any interrogatory requires information not contained within the body of the interrogatory itself renders the interrogatory vague and unanswerable.

Plaintiff objects to Defendant's purported Definitions in that each and every interrogatory is required to be internally and independently both consistent and complete. To the extent that any interrogatory requires information not contained within the body of the interrogatory itself renders the interrogatory vague and unanswerable. Further, Plaintiff objects to Defendant's purported Definitions to the extent that such Definitions exceed the scope of applicable law, the Federal Rules of Civil Procedure, and Local Rules governing responses to discovery requests.

## II. INTERROGATORIES

1. Please provide your full legal birth name, followed by a chronological listing of all other names or aliases by which you have ever been known (whether on account of marriage, divorce, name-change or otherwise).

**ANSWER: Pamela Rea Mathews; Pamela Rea Marshall; Pamela Rea Wold; Pamela Rea Wishart; Pamela Rea Glover; Pamela Rea Santini**

2. Please identify all persons whom you believe to have any knowledge concerning any of the allegations, events or conditions described in the Second Amended Complaint.

**ANSWER:**

| | | | |
|---|---|---|---|
| Mary Jo Wold | Sandra Linkous | Nancy Harmon | Officer (?) Cannady |
| Mike Harmon | Danny Lacks | Lisa Schurter | Vicki Clay |
| Lillian Cole | Orcun | Matt Thompson | Barbara Krna |
| Toni Furbringer | John Stevenson | Charles “Skip” Brennnen | Lucas Austin |
| Fiorella Harre | Mary Mathews | Jared Smith | Chris Torchia |
| Jeff (handyman) | Ben Donahue, Jr. | Larry Linkous | Seminole County Victim’s Advocate Program |
| Officer William Dunn | Officer Mathew Rice | Officer Heather Stanley | Officer Shari Collins |
| Officer Paul Michelson | Officer Mark Roche | Officer Daniel Antle | Officer Randall Payette |
| Officer Brendan Lohri | Kurt Scherer, M.D. | Yeong, S. Chon, M.D. | Dzmitry Fursevich, M.D. |
| Records Custodian - | Dr. David S. Klein | Dr. John S. Hudson | |

3. For each person identified in your answer to interrogatory 2 above, please specify the substance of the knowledge you believe each such person to have.

**ANSWER:**

**Please see information provided by Plaintiff in her Fed. R. Civ. P. 26 Initial Disclosures. This Answer is being supplemented.**

4. Please identify every physician, physician's assistant, psychologist, psychiatrist, counselor, therapist, mental health worker or other similar professional from whom you sought or obtained treatment for any condition at any time between January 1, 2013 and the present.

**OBJECTION:** **this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. "Any condition at any time between January 1, 2013 and the present" as well as every medical professional identified in the interrogatory would encompass records and information that has no relevance to the matter before the Court and is disproportionate to the needs of the case.**

5. Please identify the health care professional(s) who prescribed for you the medications described in paragraph 62 of the Second Amended Complaint, and specify when each such medication was prescribed; and (b) describe in detail the condition(s) that necessitated such prescription medications.

**ANSWER**:

**Please see the documents evidencing treatment by Drs. Klein and Hudson provided to Cole by Plaintiff in her Fed. R. Civ. P. 26 Initial Disclosures.**

6. Please identify all other prescription medications (by name and dosage) that you have taken at any time between January 1, 2017 and the present.

**OBJECTION:** **this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. "All prescription medications . . . at any time between January 1, 2017 and the present" would encompass records and information that have no relevance to the matter before the Court and is disproportionate to the needs of the case.**

7. For each prescription medication identified in your immediately prior interrogatory answer, please (a) identify the health care professional(s) who prescribed each such medication for you; and (b) specify the period of time you took (or have taken) each such medication.

**OBJECTION: this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. As objected to in response to Interrogatory No. 5, this interrogatory covering "All prescription medications . . . at any time between January 1, 2017 and the present" would encompass records and information that have no relevance to the matter before the Court and is disproportionate to the needs of the case.**

8. Please identify (by case name, case number and applicable jurisdiction) all divorce proceedings to which you have ever been a party, and identify all attorneys who represented you in connection with each such proceeding.

**OBJECTION: this Interrogatory encompasses matters that have no relevance to the claims before the Court or any possible defenses and is not proportionate to the needs of the case. Further, any such information is readily available to Defendant as any such court proceedings are a matter of public record**.

9. Please identify (by case name, case number and applicable jurisdiction) all civil litigation to which you have ever been a party, and identify all attorneys who represented you in connection with each such proceeding.

**OBJECTION: this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. Further, this Interrogatory encompasses matters that have no relevance to the claims before the Court or any possible defenses and is not proportionate to the needs of the case. Further, any such information is readily available to Defendant as any such court proceedings are a matter of public record.**

10. Please identify (by case name, case number and applicable jurisdiction) all criminal litigation to which you have ever been a party, and identify all attorneys who represented you in connection with each such proceeding.

**OBJECTION: this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. Further, this Interrogatory encompasses matters that have no relevance to the claims before the Court or any possible defenses and is not proportionate to the case. Further, any such information is readily available to Defendant as any such court proceedings are a matter of public record.**

11. Please describe with specificity all occasions on which you have ever contacted any law enforcement agency for the purpose of advising the agency of any alleged incident of assault, battery or domestic violence. For each such occasion, please specify (a) the law enforcement agency(ies) you contacted (including name and jurisdiction); (b) the date(s) of such contact(s); (c) the person(s) whom you believe committed each alleged incident of assault, battery or domestic violence; and (d) the disposition of each such contact.

**OBJECTION: this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. Further, this Interrogatory seeks information that is not relevant to the claims before the Court or any possible defenses.**

12. Please identify all of your living parents, children and siblings (full or half), and specify (a) where each such person lived between January 1, 2019 and the present; and (b) the employment status of each such person.

**OBJECTION: this Interrogatory seeks information that is not relevant to the claims before the Court or any possible defenses, in particular the employment status of Plaintiff's family members has no possible relevance to the claims or possible defenses. Further, this Interrogatory constitutes two separate Interrogatories in that subpart (b)**

**seeks information that is in a discrete area and not logically related to the information sought in the primary question.**

13. Please describe with specificity the nature and amount of the compensatory damages for which you seek recovery in this action, and identify all documents that in any way confirm, corroborate or quantify such alleged damages.

**ANSWER:**

**Plaintiff is seeking compensatory damages to include actual damages of $67,131.02 in actual costs (see Declaration of Pamela R. Mathews in Support of Her Response to the Court's Order to Show Cause, filed on August 19, 2021) and will supplement this response with the documents supporting those actual damages. The remainder of her compensatory damages sought are non-economic damages for the pain and suffering that has occurred as a result of Cole's abuse and is including in her *ad damnum* claim which also includes her demand for punitive damages.**

14. Please describe with specificity the nature and amount of the economic damages for which you seek recovery in this action, and identify all documents that in any way confirm, corroborate or quantify such alleged damages.

**ANSWER:**

**See the response to Interrogatory No. 13 above.**

15. Please describe with specificity the nature and amount of any other types of damages for which you seek recovery in this action, and identify all documents that in any way confirm, corroborate or quantify such alleged damages.

**ANSWER: See Plaintiff's response to Interrogatory No. 13. Other damages will be sought as provided for under Florida law, including those damages provided for under Fla. Stat. § 768.35. This response will be amended as information and documents become**

**available through discovery.**

16. Please identify all persons whom you believe to have any knowledge or information regarding the existence and/or amount of any of your alleged damages, whether they are physicians, psychologists, therapists, accountants, economists or otherwise.

**ANSWER**:

**Plaintiff provided the names and information of such individuals in her initial disclosures provided under Fed. R. Civ. P. 26. Please also see Plaintiff's response to Interrogatory No. 3.**

17. Please identify and provide all known contact information for "CL," the man referenced in paragraph 90 of the Second Amended Complaint.

**ANSWER: Plaintiff has no contact information for him.**

18. Please identify and provide all known contact information for (a) the retired Navy Lieutenant FLETC tactical weapons trainer (the "Weapons Trainer") referenced in paragraph 112 of the Second Amended Complaint; and (b) each of the "friends" of the Weapons Trainer referenced in paragraph 112 of the Second Amended Complaint.

**ANSWER**: **Plaintiff's husband, Jorge Santini, has this information and this response will be supplemented with that information.**

**Signature as to the Objections only:**

PATTEN, WORNOM, HATTEN,
& DIAMONSTEIN, P.C.

By: /Duncan G. Byers/
Duncan G. Byers, Esq.
(*Pro Hac Vice)*
Virginia Bar No. 48146
Andrew J. Dean, Esq.
Florida Bar No. 121808
Virginia Bar No. 88192
PATTEN, WORNOM, HATTEN
& DIAMONSTEIN, L.C.
12350 Jefferson Avenue, Ste 300
Newport News, VA 23602
Email: dbyers@pwhd.com
adean@pwhd.com
Tel: (757) 223-4500
Fax: (757) 249-1627
*Counsel for Plaintiff*

________________________________

PAMELA R. MATHEWS

STATE OF GEORGIA

COUNTY OF ______

The foregoing instrument was acknowledged before me by means of [ ] physical presence or [ ] online notarization, this___day of______, 2021 by ________________ she is personally known to me or has produced _________________________ as identification.

NOTARY PUBLIC

________________________________

Signature of Notary Public

______________________________

Typed or Printed Name of Notary Public

My commission expires:

**Casey, Shannon E. (Para-Orl-LT)**

**From:** Duncan Byers <dbyers@PWHD.com>
**Sent:** Thursday, September 9, 2021 6:22 PM
**To:** Spivey, I. William (Shld-Orl-LT)
**Cc:** Casey, Shannon E. (Para-Orl-LT); Baker, Colin (Shld-Orl-LT); Gonzalez, Samantha M. (LSS-ORL-LT); Jeannie Oxley
**Subject:** RE: Cole / Mathews
**Attachments:** Plaintiff's Supp Rsp to Def's 1st Roggs.final.pdf

**Importance:** High

Bill –

Please see attached my client's supplemental Interrogatory responses. Please note that some of the prior objections have been withdrawn.

Do you have time tomorrow to talk? Not necessarily about the discovery responses – you'll need time to review them I know, but there are a couple of other things I need to speak with you about if you have time.




Duncan G. Byers, Partner
**PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.**
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Direct: 757-223-4474
Fax: 757-249-3242
Email: dbyers@pwhd.com
Website: www.pwhd.com

https://www.pwhd.com/duncan-g-byers
https://www.linkedin.com/in/duncangbyers/






*Selected for Best Lawyers in America -*
*Intellectual Property Litigation 2021 - 2022*




**From:** Jeannie Oxley <joxley@pwhd.com>
**Sent:** Thursday, September 9, 2021 5:53 PM
**To:** 'SPIVEYW@gtlaw.com' <SPIVEYW@gtlaw.com>; Duncan Byers <dbyers@PWHD.com>
**Cc:** caseysh@gtlaw.com; bakerco@gtlaw.com; gonzalezsam@gtlaw.com
**Subject:** RE: Cole / Mathews

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAMELA R. MATHEWS,

Plaintiff,

v. Case No.: 6:21-cv-00808-WWB-EJK

BRYAN A. COLE,

Defendant.

_________________________________/

**RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF, PAMELA R. MATHEWS**

Plaintiff, Pamela R. Mathews ("Mathews") by and through her undersigned counsel and pursuant to Fed. R. Civ. P. 33, hereby objects and responds to Defendant, Bryan A. Cole's ("Cole") interrogatories as follows.

**I. PLAINTIFF'S OBJECTIONS TO "INSTRUCTIONS" AND "DEFINITIONS" OR ALL OF DEFENDANTS INTERROGATORIES**

Plaintiff objects to Defendant's purported Instructions in that any instructions for responding to discovery requests are contained within and governed by applicable law, the Federal Rules of Civil Procedure, and Local Rules. Plaintiff's responses will be made consistent with and as required by those laws and Rules and not definitions and instructions promulgated by Defendant. Plaintiff further objects to Defendant's purported Instructions as any interrogatory is required to be internally and independently both consistent and complete. To the extent that any interrogatory requires information not contained within the body of the interrogatory itself renders the interrogatory vague and unanswerable.

Plaintiff objects to Defendant's purported Definitions in that each and every interrogatory is required to be internally and independently both consistent and complete. To the extent that any interrogatory requires information not contained within the body of the interrogatory itself renders the

interrogatory vague and unanswerable. Further, Plaintiff objects to Defendant's purported Definitions to the extent that such Definitions exceed the scope of applicable law, the Federal Rules of Civil Procedure, and Local Rules governing responses to discovery requests.

## II. INTERROGATORIES

1. Please provide your full legal birth name, followed by a chronological listing of all other names or aliases by which you have ever been known (whether on account of marriage, divorce, name-change or otherwise).

**ANSWER: Pamela Rea Mathews; Pamela Rea Marshall; Pamela Rea Wold; Pamela Rea Wishart; Pamela Rea Glover; Pamela Rea Santini**

2. Please identify all persons whom you believe to have any knowledge concerning any of the allegations, events or conditions described in the Second Amended Complaint.

**ANSWER:**

| | | | |
|---|---|---|---|
| Mary Jo Wold | Sandra Linkous | Nancy Harmon | Officer (?) Cannady |
| Mike Harmon | Danny Lacks | Lisa Schurter | Vicki Clay |
| Lillian Cole | Orcun | Matt Thompson | Barbara Krna |
| Toni Furbringer | John Stevenson | Charles "Skip" Brennnen | Lucas Austin |
| Fiorella Harre | Mary Mathews | Jared Smith | Chris Torchia |
| Jeff (handyman) | Ben Donahue, Jr. | Larry Linkous | Seminole Victim's Program County Advocate |
| Officer William Dunn | Officer Mathew Rice | Officer Heather Stanley | Officer Shari Collins |

| Officer Paul Michelson | Officer Mark Roche | Officer Daniel Antle | Officer Randall Payette |
|---|---|---|---|
| Officer Brendan Lohri | Kurt Scherer, M.D. | Yeong, S. Chon, M.D. | Dzmitry Fursevich, MD . |
| Records Custodian | Dr. David S. Klein | Dr. John S. Hudson | |

3. For each person identified in your answer to interrogatory 2 above, please specify the substance of the knowledge you believe each such person to have.

**ANSWER:**

**Please see information provided by Plaintiff in her Fed. R. Civ. P. 26 Initial Disclosures.**

**This Answer is being supplemented.**

| | |
|---|---|
| **Mary J. Wold** | **It is believed that Ms. Wold has knowledge about the abuse, and injuries sustained by Plaintiff as a result of Defendant's behavior, as well as Defendant's inappropriate behavior towards her. Mary was present when Bryan played bourbon pong in the pool at her house and witnessed Bryan get out of the pool, take his clothes off and come into the house to sit on the couch. Bryan then got up and walked across the house naked to go to the bathroom. The police were called and Mary witnessed Bryan fall down by the front door in front of police. Tampa police did write a report. Also that she was personally the target of sexual advances by Cole, Cole solicited Mary for sex, Cole offered to help her pay bills in exchange for sexual favors. Mary received text from Cole stating; "I found your panties between the washer and dryer at the beach house, I picked them up and put in my pocket, I've been sniffing them all day." Mary was present when Cole screamed at defendant telling her to shut the fuck up and calling her a bitch. Mary was present on many occasions when plaintiff had anxiety attacks, was scared to the point she was hysterical crying, had flashbacks about the abuse. Mary was present in late March 2019 at the Talman house, right before Cole moved out and did not have any clue that Cole was moving out or that he intended to move out. Mary took pictures late March 2019 at the** |

| | |
|---|---|
| | **Talman house. Pictures are with Cole and his mother, Lillian Cole. Mary took many phone calls from plaintiff when she was upset and scared. Mary was the first person that plaintiff told in 2019 that Cole did the choke hold on her and she did not think she would live this time.** |
| **Sandra Linkous** | **It is believed that Mrs. Linkous will have knowledge about Plaintiff's and Defendant's relationship. Sandra was present on many occasions with Cole and Mathews. Present at Titusville New Life church with Cole and Mathews. Mathews sent Sandra text messages about Cole and his abuse. Mathews text Sandra police reports. Sandra was present when Mathews asked for help with Cole.** |
| **Nancy Harmon** | **It is believed that Ms. Harmon will have knowledge about Defendant's character. Nancy was present at lunch with Cole, after he sold Cole Engineering. Cole gave Nancy a check for $100,000 at the lunch. Nancy questioned the check, asked if she would get in trouble because she was a government contractor, that had awarded Cole many contracts. Cole told Nancy she would jot get in trouble and that it's fine because he took it from his personal account. Nancy did cash check. Cole implied to Nancy at the time that she was not the only person he had paid, that gave him contracts to build Coe Engineering. Nancy was present with Cole and Mathews at Cole's beach house. Nancy witnessed that Cole was drunk when she and her husband Mike showed up, it was before noon, on a weekend. Nancy spoke with Cole's mother a lot and Cole's mother told Nancy that Cole is an alcoholic. Corks mother told Nancy she was not allowed to make coffee anymore because Cole didn't like the way she did it. Corps mother told Nancy about how mean Cole can get with her. Nancy was on the phone with Mathews, after Cole moved out, when the alarm went off. Nancy heard Mathews go hysterical, scared that Cowl would kill her. Nancy and Mathews spoke about the abuse and trauma that came because of Cole to Mathews. Nancy is afraid of Cole and does not want to ever talk with him again. Nancy cannot prove it but believes that Cole hired someone to run her off the road, causing an accident, Nancy was hurt, and her truck was totaled. Nancy told Mathews about Barbara Kyrn. Nancy told Mathews that Cowl tried to fire Barbara but took it back when Barbara stood up to Cole.** |
| **Officer Cannady** | **It is believed that Officer Cannady will have knowledge about Plaintiff's and Defendant's relationship and Defendant's alcohol abuse and abuse of Plaintiff. Cannady answered many of the 911 calls when Cole moved out. Cannady had knowledge of most 911 calls as he listened to most of them. Wold, plaintiff's daughter, came to Talman house 4/6/2019 after Cole moved out. Wold called the police, Mathews wouldn't talk. Instead, on Cannady's body cam, Mathews told him that she will not be talk because they are all paid off in the first place. Cannady took Wold aside** |

| | |
|---|---|
| | **and spoke with her. Wold walked back to plaintiff with Cannady and asked plaintiff to please talk. Cannady and Wold assured plaintiff he was not paid off. Plaintiff told Cannady the truth about everything. Cannady saw plaintiff was very upset and insisted plaintiff go to Wold's house for a couple days. Cannady talked with plaintiff about leaving guns out around the house. Cannady came many times when alarm went off.** |
| **Mike Harmon** | **It is believed that Mr. Harmon will have knowledge about Defendant's character. Mike was at beach house when Cole answered the door, before noon, drunk. Mike has been with both plaintiff and defendant on many occasions and had witnessed the abuse and alcoholism that Cole had. Mike also witnessed Cole's behavior around Mary Wold and knew that's who Cole wanted.** |
| **Lillian Cole** | **It is believed that Ms. Cole will have knowledge about Plaintiff's and Defendant's relationship and Defendant's heavy drinking. Lillian was present around Cole and Mathews for months at a time. Lillian knew Cole was drinking too much and heard the arguments. Lillian would always blame the plaintiff for the arguments. Lillian told Nancy Harmon her true thoughts about Cole during the lunches they would have. Lillian admitted her son, Cole was an alcoholic like his father. Lillian was scolded on many occasions by Cole. Lillian ate out of the food carton in refrigerator once and Cole scolded her about it. Lillian was not allowed to make coffee anymore. Cole did not like the way she did it. Cole did not want Lillian buying any brands that were Walmart; Cole did not want them in his house. Lillian knew on 4/5/19 that she and Cole were moving out and acted as if nothing was wrong, along with Cole. Lillian, Cole and Mathews played poker with chips that evening. Both Lillian and Cole conspired that weekend, prior to moving out, as not to let Mathews know anything was wrong.** |
| **Toni Furbringer** | **It is believed that Dr. Furbringer will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same. Toni is the therapist for Mathews and has been since May 2017. Toni has knowledge of trauma and abuse to Mathews, caused by Cole. Toni is afraid of Cole and his retaliation he could do. Toni has recommended in patient treatment for Mathews as she states the trauma is too bad and cannot be handled from out-patient therapy. Toni called professionals at an in-patient treatment center to admit Mathews. Toni knows about Mathews and suicide attempt.** |
| **Fiorella Harre** | **It is believed that Ms. Harre will have knowledge about Plaintiff's and Defendant's relationship. Harre was present when Cole told Mathews he would have her killed or kill her. Harre** |

| | |
|---|---|
| | **was present on 4/5/19, she came to Talman house and cut Cole's hair. Harre witnessed Cole and his mother act like nothing was wrong. Harre is a friend of Mathews and has been at the Talman house many times with Coel and Mathews. Harre witnessed Cole telling Mathews to shut the fuck up. Harre witnessed Cole intoxicated all the time. Cole hit on Harre when getting his hair cut on occasion.** |
| **Jeff (handyman)** | **It is believed that Jeff will have knowledge regarding Plaintiff's and Defendant's relationship. Jeff went to Talman house when plaintiff put the first bullet hole in the wall. Jeff repaired the hole. Jeff came to Talman house after plaintiff tried to take her own life after shooting the walls at the Talman house, Jeff repaired walls. Jeff came to the Talman house after defendant punched a hole in the wall, next to plaintiff's head. At this point, Jeff asked plaintiff if he could get her some help, she said no. Jeff repaired hole. Jeff moved plaintiff into Longwood home and Heathrow. Jeff replaced and fixed most things on the Talman house for plaintiff. Jeff knows the relationship was exclusive in the eyes of Mathews. Jeff was present when Cole and Mathews were together, moving items into the house.** |
| **Danny Lacks** | **Mr. Lacks, who was the head engineer at Cole Engineering can testify as to the issues with the Docsinsight/Docsconnect telemedicine app and the time and money it would take to fix those issues as well as Plaintiff's competence as a businesswoman. Danny knew the Docsinsight app. Would crash and advised that they actually start over.** |
| **Orcun** | **Orcun can testify as to his creating the Docsinsight app from the beginning. He was promised a percent in the Sportsview company. Defendant stated he didn't know what he was doing and fired him. He will attest to how the app was not complete and Defendant made Plaintiff use it anyway. He can also testify as to Plaintiff's competence as a businesswoman.** |
| **John Stevenson** | **It is believed that Mr. Stevenson can testify as to Defendant's character and behavior towards Plaintiff. Stevenson witnessed defendant droning too much for years. Stevenson monitored defendants drinking at Cole Engineering functions. Stevenson wanted Cole to do a succession plan, Cole did not. Stevenson witnessed Cole's reckless behavior on many occasions. Stevenson knew about all the other women.** |
| **Mary Mathews** | **It is believed that Ms. Mathews will have knowledge about Plaintiff's and Defendant's relationship. Mary witnessed defendant drink on many occasions. Witnessed defendant drive drunk. Witnessed defendant yell at Mathews on many occasions and tell her to shut the fuck up. Mary witnessed Mathews not** |

| | |
|---|---|
| | **talking due to Cole being upset if she did. Mary and Nancy at the beach house with Mathews and Cole, Mathews didn't talk much because she was afraid Cole would get angry. Mathews told Harmon and Mary this that day. Mary was at Talman house on many occasions when Cole kept squeezing her behind and wouldn't stop. Cole handed Mary $100 bills many times. Mary was visiting when Cole tried to get her to have sex with him. Mary took an Uber home twice due to Cole's behavior and inappropriateness. Mary was visiting when Cole would not stop touching her. Mary told Cole "if you touch me again, I will slap the shit out of you", Mary witnessed Cole take clothes off at Wold's house. Mary saw Cole walk through Wold's house naked. Mary witness Cole fall over twice as police escorted him out. Mary threw Cole's pants at his that day and told him to get dressed. Mary saw Cole come back after police made him Uber to hotel and get in his vehicle to drive from Tampa back to Winter Park. Mary witnessed Cole yell at Mathews and told her to get in. Mary was at the house on many occasions heard arguments. Mary came to Talman house after Cole left, was afraid to stay at the house, Mary was afraid of what Cole would do. Mary called 911 from her cell phone several times while staying at the Talman house. 911 calls; these calls will show Howe hysteria and scared plaintiff was. Calls will also show how scared Mary was at Talman house.** |
| **Ben Donahue, Jr.** | **It is believed that Mr. Donahue will have knowledge regarding Plaintiff's and Defendant's relationship. Mathews sent Donahue a Linked-In message about Cole and the abuse. Mathews sent Donahue; via email for Bylight company, a copy of police reports and picture of hookers, told Donahue the truth.** |
| **Lisa Schurter** | **Ms. Schurter will have knowledge as to Defendant's drinking and abusive behavior. Lisa was in a relationship with Cole when Mathews met Cole. Cole cheated on Lisa for approx 7 months during the time he was with Mathews. Coke made Lisa move out, bought her a home. Then Cole had Lisa move back into the Trismen home, all while having a relationship with Mathews. Cole then made Lisa move out of the Trismen home and moved Mathews into the home. Thai was after the floors were fixed, prior to that Lisa was made to move out and Cole lived with Mathews in Lake Mary apartment. Lisa emailed Mathews that she wanted nothing to do with Cole because he was with Mathews. Lisa sent text messages after 4/6/19 to Mathews attempting to blackmail Mathews so she would not file a PTSD lawsuit against Cole. Lisa made accusations of Mathews being abusive towards Cole's mother; emails, witnesses and photos will prove otherwise. Lisa currently with Cole, Cole attempted to contact Mathews via email, while with Lisa just a couple months ago, email stated; coel** |

| | |
|---|---|
| | **watched a sexual video of Mathews and he just had to tell her that she was so** |
| **Matt Thompson** | **It is believed that Mr. Thompson can testify as to the prostitutes hired by Defendant and has knowledge of the abuse Plaintiff suffered by Defendant. Mathews sent Thompson many emails about Cole, to include police reports and pictures. Mathews called Thompson to ask him to please help her. Thomson present many occasions with Mathews and Cole. Thompson aware of the excessive drinking because he does the same. Thompson and Cole had regular happy hour at Coke Engineering while on the clock.** |
| **Charles "Skip" Brennnen** | **It is believed that Mr. Brennen will have knowledge as to Defendant's character and has knowledge of Defendant's business dealings. It is also believed that Mr. Brennan will have knowledge about Plaintiff's and Defendant's relationship. Brennan was present at a lunch with Cole when Cole insisted on drinking in front of Brennen, a recovering alcoholic. Brennen personally asked Cole to help the businesses, on several occasions. Cole would tell Brennen one thing and so another. Brennen witnessed Mathews call Cole and Cole promised to pay partners, then Cole would not follow through. Brennen has always believed Mathews was groomed from the start. Brennen will say he has witnessed the emotional and mental toll the PTSD and Stockholm syndrome that Mathews has been through. Brennen tried on many occasions to help Mathews leave Cole. Brennen witnessed Cole make sure that Mathews did not succeed in business and stay financially dependent upon Cole. Brennen witnessed Cole threaten Mathews that he would take away basic needs if she didn't do what he wanted.** |
| **Jared Smith** | **It is believed that Mr. Smith will have knowledge about Defendant's character. Jared was in a meeting with Cole and Mathews where he witnessed Cole make many promises, on behalf of he and Mathews, to large accounts. After the meeting, Cole, Mathews and Jared went to get a drink, Cole hurried and told Jared he wanted to leave. Jared witnessed Cole not follow through with any promises he made, leaving Mathews to lose credibility within her industry and lose accounts. Jared states that Cole wanted Mathews to fail.** |
| **Larry Linkous** | **It is believed that Mr. Linkous will have knowledge about Plaintiff's and Defendant's relationship Larry was the pastor at Titusville New Life church. Larry's son took his place. Larry is Bryan's best friend. Larry was with Coke and Mathews on many occasions. Mathews reached out to Larry via phone twice and begged him to help her with Cole. Mathews emailed Larry police reports and hookers pictures. Cole was the largest giver of money within this church. Cole once told Larry that he had a problem** |

| | |
|---|---|
| | **with the one ply toilet paper in the church, Larry promised it would be gone next time. After that, the toilet paper was always two ply or better. Cole has given Larry a lot of money through the years, I don't know the exact figure, but it's very large. Larry would not turn on Coke as this would hurt him financially on a personal level and a church level. In fact, Larry is in Cole's will so the church building will be lis off.** |
| **Vicki Clay** | **Ms. Clay will have knowledge as to Plaintiff's and Defendant's relationship.** |
| **Barbara Krna** | **It is believed that Ms. Krna will have knowledge as to Defendant's character and behavior.** |
| **Lucas Austin** | **It is believed that Mr. Austin will have knowledge as to Plaintiff's and Defendant's relationship, as well as Defendant's character and lewd behavior.** |
| **Chris Torchia** | **It is believed that Attorney Torchia will have knowledge regarding Plaintiff's and Defendant's relationship.** |
| **Seminole Victim's Program County Advocate** | **It is believed that the Victim's Advocate Program Advocate will have information relating to domestic incidents involving Plaintiff and Defendant.** |
| **Officer William Dunn** | **It is believed that Officer Dunn will have information relating to a 911 call on 1/29/2019 involving Plaintiff and Defendant.** |
| **Officer Paul Michelson** | **It is believed that Officer Michelson will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant.** |
| **Officer Brendan Lohri** | **It is believed that Officer Lohri will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant.** |
| **Officer Mathew Rice** | **It is believed that Officer Rice will have information relating to a 911 call on 1/29/2019 involving Plaintiff and Defendant.** |
| **Officer Mark Roche** | **It is believed that Officer Roche will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant.** |
| **Officer Heather Stanley** | **It is believed that Officer Stanley will have information relating to a 911 call on 1/29/2019 involving Plaintiff and Defendant.** |
| **Officer Daniel Antle** | **It is believed that Officer Antle will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant.** |
| **Officer Shari Collins** | **It is believed that Officer Collins will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant.** |
| **Officer Randall Payette** | **It is believed that Officer Payette will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant.** |
| **Kurt Scherer, MD** | **It is believed that Dr. Scherer will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same.** |

| **David S. Klein, MD** | **It is believed that Dr. Klein will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same.** |
|---|---|
| **Yeong, S. Chon, MD** | **It is believed that Dr. Chon will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same.** |
| **John S. Hudson, MD** | **It is believed that Dr. Hudson will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same.** |
| **Dzmitry Fursevich, MD** | **It is believed that Dr. Fursevich will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same.** |

4. Please identify every physician, physician's assistant, psychologist, psychiatrist, counselor, therapist, mental health worker or other similar professional from whom you sought or obtained treatment for any condition at any time between January 1, 2013 and the present.

OBJECTION: This Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. "Any condition at any time between January 1, 2013 and the present" as well as every medical professional identified in the interrogatory would encompass records and information that has no relevance to the matter before the Court and is disproportionate to the needs of the case.

**ANSWER: Subject to and without waiving objection above, see medical records produced in response to Defendant's First Request for Production and Plaintiff's Fed. R. Civ. P. 26 Initial Disclosures.**

5. Please identify the health care professional(s) who prescribed for you the medications described in paragraph 62 of the Second Amended Complaint, and specify when each such medication was prescribed; and (b) describe in detail the condition(s) that necessitated such prescription medications.

**ANSWER**:

Please see the documents evidencing treatment by Drs. Klein and Hudson provided to Cole by Plaintiff in her Fed. R. Civ. P. 26 Initial Disclosures.

**SUPP. ANSWER: Please see documents evidencing treatment by Drs. Klein and Hudson as provided in response to Defendant's First Request for Production.**

6. Please identify all other prescription medications (by name and dosage) that you have taken at any time between January 1, 2017 and the present.

OBJECTION: this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. "All prescription medications . . . at any time between January 1, 2017 and the present" would encompass records and information that have no relevance to the matter before the Court and is disproportionate to the needs of the case.

**SUPPLEMENTAL RESPONSE**:

1. Wellbutrin XL 150 mg
2. Adrenall
3. Biest/Progesterone/Testosterone Trandsermal 4.0 mg
4. Prphenadrine ER 100 mg
5. Vitamin D3 5,000 unit softgel 125 mcg
6. Apple Cider Vingr 600 mg cap
7. Multivitamin tablet
8. Prazosin 2 mg
9. Alprazolam 1 mg
10. Mydayis ER 50 mg

7. For each prescription medication identified in your immediately prior interrogatory answer, please (a) identify the health care professional(s) who prescribed each such medication for you; and (b) specify the period of time you took (or have taken) each such medication.

OBJECTION: this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. As objected to in response to Interrogatory No. 5, this interrogatory covering "All prescription medications . . . at any time between January 1, 2017 and the present" would encompass records and information that have no relevance to the matter before the Court and is disproportionate to the needs of the case.

8. Please identify (by case name, case number and applicable jurisdiction) all divorce proceedings to which you have ever been a party, and identify all attorneys whorepresented you in connection with each such proceeding.

OBJECTION: this Interrogatory encompasses matters that have no relevance to the claims before the Court or any possible defenses and is not proportionate to the needs of the case. Further, any such information is readily available to Defendant as any such court proceedings are a matter of public record.

9. Please identify (by case name, case number and applicable jurisdiction) all civil

litigation to which you have ever been a party, and identify all attorneys who represented you in connection with each such proceeding.

**OBJECTION:** this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. Further, this Interrogatory encompasses matters that have no relevance to the claims before the Court or any possible defenses and is not proportionate to the needs of the case. Further, any such information is readily available to Defendant as any such court proceedings are a matter of public record.

10. Please identify (by case name, case number and applicable jurisdiction) all criminal litigation to which you have ever been a party and identify all attorneys who represented you in connection with each such proceeding.

**OBJECTION:** this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. Further, this Interrogatory encompasses matters that have no relevance to the claims before the Court or any possible defenses and is not proportionate to the case. Further, any such information is readily available to Defendant as any such court proceedings are a matter of public record.

11. Please describe with specificity all occasions on which you have ever contacted any law enforcement agency for the purpose of advising the agency of any alleged incident of assault, battery or domestic violence. For each such occasion, please specify (a) the law enforcement agency(ies) you contacted (including name and jurisdiction); (b) the date(s) of such contact(s); (c) the person(s) whom you believe committed each alleged incident of assault, battery or domestic violence; and (d) the disposition of each such contact.

OBJECTION: this Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. Further, this Interrogatory seeks information that is not relevant to the claims before the Court or any possible defenses.

**ANSWER: Without waiving said objection, Defendant can obtain a copy of all "911" call from the Seminole County Sheriff's Department.**

12. Please identify all of your living parents, children and siblings (full or half), and specify (a) where each such person lived between January 1, 2019 and the present; and (b) the

employment status of each such person.

**OBJECTION:** this Interrogatory seeks information that is not relevant to the claims before the Court or any possible defenses, in particular the employment status of Plaintiff's family members has no possible relevance to the claims or possible defenses. Further, this Interrogatory constitutes two separate Interrogatories in that subpart (b) seeks information that is in a discrete area and not logically related to the information sought in the primary question.

**ANSWER**: **Subject to and without waiving said objection, Plaintiff does not have the exact location of all relatives, however, she has provided the last known states in which her relatives resided.**

**Mary Mathews (mother) 1700 6th Street NW, Unit C38, Winter Haven, FL 33881**
**Mary Jo Wold (daughter) 12524 Blazing Star Drive, Tampa, FL 33626**
**William Wold (son) Jacksonville, FL Methodist Minister**
**Don Mathews (brother) Fort Myers, FL**
**Paula Patton (sister) Dunnellon, FL**
**Peggy Morrison (sister) Lakeland, FL**
**Scott Davis (mother's side half brother) Michigan**
**John Davis (mother's side half brother) Texas**

13. Please describe with specificity the nature and amount of the compensatory damages for which you seek recovery in this action, and identify all documents that in any way confirm, corroborate or quantify such alleged damages.

**ANSWER:**

Plaintiff is seeking compensatory damages to include actual damages of $67,131.02 in actual costs (see Declaration of Pamela R. Mathews in Support of Her Response to the Court's Order to Show Cause, filed on August 19, 2021) and will supplement this response with the documents supporting those actual damages. The remainder of her compensatory damages sought are non-economic damages for the pain and suffering that has occurred as a result of Cole's abuse and is including in her *ad damnum* claim which also includes her demand for punitive damages.

14. Please describe with specificity the nature and amount of the economic damages for which you seek recovery in this action, and identify all documents that in any way confirm, corroborate or quantify such alleged damages.

**ANSWER**:

See the response to Interrogatory No. 13 above.

15. Please describe with specificity the nature and amount of any other types of damages for which you seek recovery in this action, and identify all documents that in any way confirm, corroborate or quantify such alleged damages.

**ANSWER:** See Plaintiff's response to Interrogatory No. 13. Other damages will be sought as provided for under Florida law, including those damages provided for under Fla. Stat. § 768.35. This response will be amended as information and documents become available through discovery.

16. Please identify all persons whom you believe to have any knowledge or information regarding the existence and/or amount of any of your alleged damages, whether they are physicians, psychologists, therapists, accountants, economists or otherwise.

**ANSWER**:

Plaintiff provided the names and information of such individuals in her initial disclosures provided under Fed. R. Civ. P. 26. Please also see Plaintiff's response to Interrogatory No. 3.

17. Please identify and provide all known contact information for "CL," the man referenced in paragraph 90 of the Second Amended Complaint.

**ANSWER**: Plaintiff has no contact information for him.

18. Please identify and provide all known contact information for (a) the retired Navy Lieutenant FLETC tactical weapons trainer (the "Weapons Trainer") referenced in paragraph 112 of the Second Amended Complaint; and (b) each of the "friends" of the Weapons Trainer referenced in paragraph 112 of the Second Amended Complaint.

**ANSWER**: Plaintiff's husband, Jorge Santini, has this information and this response will

be supplemented with that information.

**SUPPLEMENTAL ANSWER:**

**Mitch Delong**
**220 4th Street SE**
**Aliceville, Alabama 35442**

**Mike Sanford**
**201Deer Wood Village Drive**
**Woodbine Georgia 31569**

PATTEN, WORNOM,
HATTEN, & DIAMONSTEIN, P.C.

By: /Duncan G. Byer/________________________________
Duncan G. Byers, Esq.
(*Pro Hac Vice)* Virginia Bar No. 48146
Andrew J. Dean, Esq.
Florida Bar No. 121808
Virginia Bar No. 88192
PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.
12350 Jefferson Avenue, Ste 300
Newport News, VA 23602
Email: dbyers@pwhd.com
adean@pwhd.com
Tel: (757) 223-4500
Fax: (757) 249-1627
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify the on this 3rd day of September 2021, I served the above document via email to the following:

William Spivey, II, Esquire
Colin S. Baker, Esquire
GREENBERG TRAURIG, P.A.
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909
Email: spiveyw@gtlaw.com

bakerco@gtlaw.com
nef-iws@gtlaw.com
FLService@gtlaw.com
*Counsel Defendant Bryan Cole*

/Duncan G. Byers/
Duncan G. Byers, Esquire
Virginia Bar No. 48146
Andrew J. Dean, Esq.
Florida Bar No. 121808
Virginia Bar No. 88192
PATTEN, WORNOM, HATTEN
& DIAMONSTEIN, P.C.
12350 Jefferson Avenue, Ste 300
Newport News, VA 23602
Email: dbyers@pwhd.com
adean@pwhd.com
Tel: (757) 223-4500
Fax: (757) 249-1627
*Counsel for Plaintiff*

## Casey, Shannon E. (Para-Orl-LT)

**From:** Jeannie Oxley <joxley@pwhd.com>
**Sent:** Wednesday, September 15, 2021 2:38 PM
**To:** Spivey, I. William (Shld-Orl-LT); Baker, Colin (Shld-Orl-LT); NEF - IWS; FLService
**Cc:** Duncan Byers
**Subject:** Mathews v. Cole, Middle District Case No. 21-cv-00808
**Attachments:** Plf 2nd Supp Rsp to Def's 1st Roggs.pdf; Plf's 3rd Supp Rsp to RFP.pdf; 9_14_21 LTR OF REFERRAL(BATES 1138).pdf

***EXTERNAL TO GT***

Good Afternoon Mr. Spivey:

Attached please find Plaintiff's Second Supplemental Responses to Defendant's First Set of Interrogatories to Plaintiff, and Plaintiff's Third Supplemental Responses to Defendant's First Request for Production to Plaintiff.

Should you have any questions, please do not hesitate to give me a call.




Jeannie Oxley, Paralegal to Duncan G. Byers
**PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.**
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Direct: 757-223-4457
Fax: 757-249-1627
Email: joxley@pwhd.com
Website: www.pwhd.com

CONFIDENTIALITY NOTICE:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of this message.

IRS Circular 230 Disclosure: Unless expressly stated otherwise in the forgoing message, this communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written to be used, and it cannot be used by the taxpayer for the purpose of avoiding tax penalties that may be imposed by the Internal Revenue Service.

CONFIDENTIALITY NOTICE: This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of this message. IRS Circular 230 Disclosure: Unless expressly stated otherwise in the forgoing message, this communication is not a tax opinion. To the extent it contains

tax advice, it is not intended or written to be used, and it cannot be used by the taxpayer for the purpose of avoiding tax penalties that may be imposed by the Internal Revenue Service.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAMELA R. MATHEWS,

Plaintiff,

v. Case No.: 6:21-cv-00808-WWB-EJK

BRYAN A. COLE,

Defendant.

_________________________________/

**SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF, PAMELA R. MATHEWS**

Plaintiff, Pamela R. Mathews ("Mathews") by and through her undersigned counsel and pursuant to Fed. R. Civ. P. 33, hereby serves her Second Supplemental Responses to Defendant's First Set of Interrogatories as follows.

**II. INTERROGATORIES**

2. Please identify all persons whom you believe to have any knowledge concerning any of the allegations, events or conditions described in the Second Amended Complaint.

**ANSWER:**

| | | | |
|---|---|---|---|
| Mary Jo Wold | Sandra Linkous | Nancy Harmon | Officer (?) Cannady |
| Mike Harmon | Danny Lacks | Lisa Schurter | Vicki Clay |
| Lillian Cole | Orcun | Matt Thompson | Barbara Krna |
| Toni Furbringer | John Stevenson | Charles "Skip" Brennnen | Lucas Austin |
| Fiorella Harre | Mary Mathews | Jared Smith | Chris Torchia |

| Jeff (handyman) | Ben Donahue, Jr. | Larry Linkous | Seminole Victim's Program County Advocate |
|---|---|---|---|
| Officer William Dunn | Officer Mathew Rice | Officer Heather Stanley | Officer Shari Collins |
| Officer Paul Michelson | Officer Mark Roche | Officer Daniel Antle | Officer Randall Payette |
| Officer Brendan Lohri | Kurt Scherer, M.D. | Yeong, S. Chon, M.D. | Dzmitry Fursevich, MD . |
| Records Custodian | Dr. David S. Klein | Dr. John S. Hudson | |

**SUPPLEMENTAL RESPONSE: See attached letter of referral dated September 14, 2021 from Charito Alley PA-C, bates stamped as PLF PRODUCTION 0001138.**

3. For each person identified in your answer to interrogatory 2 above, please specify the substance of the knowledge you believe each such person to have.

**ANSWER:**

Please see information provided by Plaintiff in her Fed. R. Civ. P. 26 Initial Disclosures. This Answer is being supplemented.

| | |
|---|---|
| Mary J. Wold | It is believed that Ms. Wold has knowledge about the abuse, and injuries sustained by Plaintiff as a result of Defendant's behavior, as well as Defendant's inappropriate behavior towards her. Mary was present when Bryan played bourbon pong in the pool at her house and witnessed Bryan get out of the pool, take his clothes off and come into the house to sit on the couch. Bryan then got up and walked across the house naked to go to the bathroom. The police were called |

| | |
|---|---|
| | and Mary witnessed Bryan fall down by the front door in front of police. Tampa police did write a report. Also that she was personally the target of sexual advances by Cole, Cole solicited Mary for sex, Cole offered to help her pay bills in exchange for sexual favors. Mary received text from Cole stating; "I found your panties between the washer and dryer at the beach house, I picked them up and put in my pocket, I've been sniffing them all day." Mary was present when Cole screamed at defendant telling her to shut the fuck up and calling her a bitch. Mary was present on many occasions when plaintiff had anxiety attacks, was scared to the point she was hysterical crying, had flashbacks about the abuse. Mary was present in late March 2019 at the Talman house, right before Cole moved out and did not have any clue that Cole was moving out or that he intended to move out. Mary took pictures late March 2019 at the Talman house. Pictures are with Cole and his mother, Lillian Cole. Mary took many phone calls from plaintiff when she was upset and scared. Mary was the first person that plaintiff told in 2019 that Cole did the choke hold on her and she did not think she would live this time. |
| Sandra Linkous | It is believed that Mrs. Linkous will have knowledge about Plaintiff's and Defendant's relationship. Sandra was present on many occasions with Cole and Mathews. Present at Titusville New Life church with Cole and Mathews. Mathews sent Sandra text messages about Cole and his abuse. Mathews text Sandra police reports. Sandra was present when Mathews asked for help with Cole. |
| Nancy Harmon | It is believed that Ms. Harmon will have knowledge about Defendant's character. Nancy was present at lunch with Cole, after he sold Cole Engineering. Cole gave Nancy a check for $100,000 at the lunch. Nancy questioned the check, asked if she would get in trouble because she was a government contractor, that had awarded Cole many contracts. Cole told Nancy she would jot get in trouble and that it's fine because he took it from his personal account. Nancy did cash check. Cole implied to Nancy at the time that she was not the only person he had paid, that gave him contracts to build Coe Engineering. Nancy was present with Cole and Mathews at Cole's beach house. Nancy witnessed that Cole was drunk when she and her husband Mike showed up, it was before noon, on a weekend. Nancy spoke with Cole's mother a lot and Cole's mother told Nancy that Cole is an alcoholic. Corks mother told Nancy she was not allowed to make coffee anymore because Cole didn't like the way she did it. Corps mother told Nancy about how mean Cole can get with her. Nancy was on the phone with Mathews, after Cole moved out, when the alarm went off. Nancy heard Mathews go hysterical, scared that Cowl would kill her. Nancy and Mathews spoke about the abuse and trauma that came because of Cole to Mathews. Nancy is afraid of Cole and does not want to ever talk with him again. Nancy cannot prove it but believes that Cole hired someone to run her off the road, causing an accident, Nancy was hurt, and her truck was totaled. Nancy told Mathews about Barbara Kyrn. Nancy told Mathews that |

| | |
|---|---|
| | Cowl tried to fire Barbara but took it back when Barbara stood up to Cole. |
| Officer Cannady | It is believed that Officer Cannady will have knowledge about Plaintiff's and Defendant's relationship and Defendant's alcohol abuse and abuse of Plaintiff. Cannady answered many of the 911 calls when Cole moved out. Cannady had knowledge of most 911 calls as he listened to most of them. Wold, plaintiff's daughter, came to Talman house 4/6/2019 after Cole moved out. Wold called the police, Mathews wouldn't talk. Instead, on Cannady's body cam, Mathews told him that she will not be talk because they are all paid off in the first place. Cannady took Wold aside and spoke with her. Wold walked back to plaintiff with Cannady and asked plaintiff to please talk. Cannady and Wold assured plaintiff he was not paid off. Plaintiff told Cannady the truth about everything. Cannady saw plaintiff was very upset and insisted plaintiff go to Wold's house for a couple days. Cannady talked with plaintiff about leaving guns out around the house. Cannady came many times when alarm went off. |
| Mike Harmon | It is believed that Mr. Harmon will have knowledge about Defendant's character. Mike was at beach house when Cole answered the door, before noon, drunk. Mike has been with both plaintiff and defendant on many occasions and had witnessed the abuse and alcoholism that Cole had. Mike also witnessed Cole's behavior around Mary Wold and knew that's who Cole wanted. |
| Lillian Cole | It is believed that Ms. Cole will have knowledge about Plaintiff's and Defendant's relationship and Defendant's heavy drinking. Lillian was present around Cole and Mathews for months at a time. Lillian knew Cole was drinking too much and heard the arguments. Lillian would always blame the plaintiff for the arguments. Lillian told Nancy Harmon her true thoughts about Cole during the lunches they would have. Lillian admitted her son, Cole was an alcoholic like his father. Lillian was scolded on many occasions by Cole. Lillian ate out of the food carton in refrigerator once and Cole scolded her about it. Lillian was not allowed to make coffee anymore. Cole did not like the way she did it. Cole did not want Lillian buying any brands that were Walmart; Cole did not want them in his house. Lillian knew on 4/5/19 that she and Cole were moving out and acted as if nothing was wrong, along with Cole. Lillian, Cole and Mathews played poker with chips that evening. Both Lillian and Cole conspired that weekend, prior to moving out, as not to let Mathews know anything was wrong. |
| Toni Furbringer | It is believed that Dr. Furbringer will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same. Toni is the therapist for Mathews and has been since May 2017. Toni has knowledge of trauma and abuse to Mathews, caused by Cole. Toni is afraid of Cole and his retaliation he could do. Toni has recommended |

| | |
|---|---|
| | in patient treatment for Mathews as she states the trauma is too bad and cannot be handled from out-patient therapy. Toni called professionals at an in-patient treatment center to admit Mathews. Toni knows about Mathews and suicide attempt. |
| Fiorella Harre | It is believed that Ms. Harre will have knowledge about Plaintiff's and Defendant's relationship. Harre was present when Cole told Mathews he would have her killed or kill her. Harre was present on 4/5/19, she came to Talman house and cut Cole's hair. Harre witnessed Cole and his mother act like nothing was wrong. Harre is a friend of Mathews and has been at the Talman house many times with Coel and Mathews. Harre witnessed Cole telling Mathews to shut the fuck up. Harre witnessed Cole intoxicated all the time. Cole hit on Harre when getting his hair cut on occasion. |
| Jeff (handyman) | It is believed that Jeff will have knowledge regarding Plaintiff's and Defendant's relationship. Jeff went to Talman house when plaintiff put the first bullet hole in the wall. Jeff repaired the hole. Jeff came to Talman house after plaintiff tried to take her own life after shooting the walls at the Talman house, Jeff repaired walls. Jeff came to the Talman house after defendant punched a hole in the wall, next to plaintiff's head. At this point, Jeff asked plaintiff if he could get her some help, she said no. Jeff repaired hole. Jeff moved plaintiff into Longwood home and Heathrow. Jeff replaced and fixed most things on the Talman house for plaintiff. Jeff knows the relationship was exclusive in the eyes of Mathews. Jeff was present when Cole and Mathews were together, moving items into the house. |
| Danny Lacks | Mr. Lacks, who was the head engineer at Cole Engineering can testify as to the issues with the Docsinsight/Docsconnect telemedicine app and the time and money it would take to fix those issues as well as Plaintiff's competence as a businesswoman. Danny knew the Docsinsight app. Would crash and advised that they actually start over. |
| Orcun | Orcun can testify as to his creating the Docsinsight app from the beginning. He was promised a percent in the Sportsview company. Defendant stated he didn't know what he was doing and fired him. He will attest to how the app was not complete and Defendant made Plaintiff use it anyway. He can also testify as to Plaintiff's competence as a businesswoman. |
| John Stevenson | It is believed that Mr. Stevenson can testify as to Defendant's character and behavior towards Plaintiff. Stevenson witnessed defendant droning too much for years. Stevenson monitored defendants drinking at Cole Engineering functions. Stevenson wanted Cole to do a succession plan, Cole did not. Stevenson witnessed Cole's reckless behavior on many occasions. Stevenson knew about all the other women. |

| | |
|---|---|
| Mary Mathews | It is believed that Ms. Mathews will have knowledge about Plaintiff's and Defendant's relationship. Mary witnessed defendant drink on many occasions. Witnessed defendant drive drunk. Witnessed defendant yell at Mathews on many occasions and tell her to shut the fuck up. Mary witnessed Mathews not talking due to Cole being upset if she did. Mary and Nancy at the beach house with Mathews and Cole, Mathews didn't talk much because she was afraid Cole would get angry. Mathews told Harmon and Mary this that day. Mary was at Talman house on many occasions when Cole kept squeezing her behind and wouldn't stop. Cole handed Mary $100 bills many times. Mary was visiting when Cole tried to get her to have sex with him. Mary took an Uber home twice due to Cole's behavior and inappropriateness. Mary was visiting when Cole would not stop touching her. Mary told Cole "if you touch me again, I will slap the shit out of you", Mary witnessed Cole take clothes off at Wold's house. Mary saw Cole walk through Wold's house naked. Mary witness Cole fall over twice as police escorted him out. Mary threw Cole's pants at his that day and told him to get dressed. Mary saw Cole come back after police made him Uber to hotel and get in his vehicle to drive from Tampa back to Winter Park. Mary witnessed Cole yell at Mathews and told her to get in. Mary was at the house on many occasions heard arguments. Mary came to Talman house after Cole left, was afraid to stay at the house, Mary was afraid of what Cole would do. Mary called 911 from her cell phone several times while staying at the Talman house. 911 calls; these calls will show Howe hysteria and scared plaintiff was. Calls will also show how scared Mary was at Talman house. |
| Ben Donahue, Jr. | It is believed that Mr. Donahue will have knowledge regarding Plaintiff's and Defendant's relationship. Mathews sent Donahue a Linked-In message about Cole and the abuse. Mathews sent Donahue; via email for Bylight company, a copy of police reports and picture of hookers, told Donahue the truth. |
| Lisa Schurter | Ms. Schurter will have knowledge as to Defendant's drinking and abusive behavior. Lisa was in a relationship with Cole when Mathews met Cole. Cole cheated on Lisa for approx 7 months during the time he was with Mathews. Coke made Lisa move out, bought her a home. Then Cole had Lisa move back into the Trismen home, all while having a relationship with Mathews. Cole then made Lisa move out of the Trismen home and moved Mathews into the home. Thai was after the floors were fixed, prior to that Lisa was made to move out and Cole lived with Mathews in Lake Mary apartment. Lisa emailed Mathews that she wanted nothing to do with Cole because he was with Mathews. Lisa sent text messages after 4/6/19 to Mathews attempting to blackmail Mathews so she would not file a PTSD lawsuit against Cole. Lisa made accusations of Mathews being abusive towards Cole's mother; emails, witnesses and photos will prove otherwise. Lisa |

| | |
|---|---|
| | currently with Cole, Cole attempted to contact Mathews via email, while with Lisa just a couple months ago, email stated; coel watched a sexual video of Mathews and he just had to tell her that she was so |
| Matt Thompson | It is believed that Mr. Thompson can testify as to the prostitutes hired by Defendant and has knowledge of the abuse Plaintiff suffered by Defendant. Mathews sent Thompson many emails about Cole, to include police reports and pictures. Mathews called Thompson to ask him to please help her. Thomson present many occasions with Mathews and Cole. Thompson aware of the excessive drinking because he does the same. Thompson and Cole had regular happy hour at Coke Engineering while on the clock. |
| Charles "Skip" Brennnen | It is believed that Mr. Brennen will have knowledge as to Defendant's character and has knowledge of Defendant's business dealings. It is also believed that Mr. Brennan will have knowledge about Plaintiff's and Defendant's relationship. Brennan was present at a lunch with Cole when Cole insisted on drinking in front of Brennen, a recovering alcoholic. Brennen personally asked Cole to help the businesses, on several occasions. Cole would tell Brennen one thing and so another. Brennen witnessed Mathews call Cole and Cole promised to pay partners, then Cole would not follow through. Brennen has always believed Mathews was groomed from the start. Brennen will say he has witnessed the emotional and mental toll the PTSD and Stockholm syndrome that Mathews has been through. Brennen tried on many occasions to help Mathews leave Cole. Brennen witnessed Cole make sure that Mathews did not succeed in business and stay financially dependent upon Cole. Brennen witnessed Cole threaten Mathews that he would take away basic needs if she didn't do what he wanted. |
| Jared Smith | It is believed that Mr. Smith will have knowledge about Defendant's character. Jared was in a meeting with Cole and Mathews where he witnessed Cole make many promises, on behalf of he and Mathews, to large accounts. After the meeting, Cole, Mathews and Jared went to get a drink, Cole hurried and told Jared he wanted to leave. Jared witnessed Cole not follow through with any promises he made, leaving Mathews to lose credibility within her industry and lose accounts. Jared states that Cole wanted Mathews to fail. |
| Larry Linkous | It is believed that Mr. Linkous will have knowledge about Plaintiff's and Defendant's relationship Larry was the pastor at Titusville New Life church. Larry's son took his place. Larry is Bryan's best friend. Larry was with Coke and Mathews on many occasions. Mathews reached out to Larry via phone twice and begged him to help her with Cole. Mathews emailed Larry police reports and hookers pictures. Cole was the largest giver of money within this church. Cole once told Larry that he had a problem with the one ply toilet paper in the church, Larry promised it would be gone next time. After that, the |

| | |
|---|---|
| | toilet paper was always two ply or better. Cole has given Larry a lot of money through the years, I don't know the exact figure, but it's very large. Larry would not turn on Coke as this would hurt him financially on a personal level and a church level. In fact, Larry is in Cole's will so the church building will be lis off. |
| Vicki Clay | Ms. Clay will have knowledge as to Plaintiff's and Defendant's relationship. |
| Barbara Krna | It is believed that Ms. Krna will have knowledge as to Defendant's character and behavior. |
| Lucas Austin | It is believed that Mr. Austin will have knowledge as to Plaintiff's and Defendant's relationship, as well as Defendant's character and lewd behavior. |
| Chris Torchia | It is believed that Attorney Torchia will have knowledge regarding Plaintiff's and Defendant's relationship. |
| Seminole Victim's Program County Advocate | It is believed that the Victim's Advocate Program Advocate will have information relating to domestic incidents involving Plaintiff and Defendant. |
| Officer William Dunn | It is believed that Officer Dunn will have information relating to a 911 call on 1/29/2019 involving Plaintiff and Defendant. |
| Officer Paul Michelson | It is believed that Officer Michelson will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant. |
| Officer Brendan Lohri | It is believed that Officer Lohri will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant. |
| Officer Mathew Rice | It is believed that Officer Rice will have information relating to a 911 call on 1/29/2019 involving Plaintiff and Defendant. |
| Officer Mark Roche | It is believed that Officer Roche will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant. |
| Officer Heather Stanley | It is believed that Officer Stanley will have information relating to a 911 call on 1/29/2019 involving Plaintiff and Defendant. |
| Officer Daniel Antle | It is believed that Officer Antle will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant. |
| Officer Shari Collins | It is believed that Officer Collins will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant. |
| Officer Randall Payette | It is believed that Officer Payette will have information relating to a 911 call for battery/domestic abuse on 2/12/2017 involving Plaintiff and Defendant. |
| Kurt Scherer, MD | It is believed that Dr. Scherer will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same. |
| David S. Klein, MD | It is believed that Dr. Klein will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same. |

| | |
|---|---|
| Yeong, S. Chon, MD | It is believed that Dr. Chon will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same. |
| John S. Hudson, MD | It is believed that Dr. Hudson will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same. |
| Dzmitry Fursevich, MD | It is believed that Dr. Fursevich will have knowledge as to treatment rendered Plaintiff and the circumstances surrounding same. |

**SUPPLEMENTAL RESPONSE: Substance is described in the attached letter of referral dated September 14, 2021 from Charito Alley PA-C, bates stamped as PLF PRODUCTION 0001138.**

4. Please identify every physician, physician's assistant, psychologist, psychiatrist, counselor, therapist, mental health worker or other similar professional from whom you sought or obtained treatment for any condition at any time between January 1, 2013 and the present.

OBJECTION: This Interrogatory is not reasonably particularized and is overbroad and, as such, is an improper Interrogatory. "Any condition at any time between January 1, 2013 and the present" as well as every medical professional identified in the interrogatory would encompass records and information that has no relevance to the matter before the Court and is disproportionate to the needs of the case.

ANSWER: Subject to and without waiving objection above, see medical records produced in response to Defendant's First Request for Production and Plaintiff's Fed. R. Civ. P. 26 Initial Disclosures.

**SUPPLEMENTAL RESPONSE: See attached letter of referral dated September 14, 2021 from Charito Alley PA-C, bates stamped as PLF PRODUCTION 0001138.**

14. Please describe with specificity the nature and amount of the economic damages for which you seek recovery in this action, and identify all documents that in any way confirm, corroborate or quantify such alleged damages.

**ANSWER:**

See the response to Interrogatory No. 13 above.

**SUPPLEMENTAL RESPONSE: Cost of in-treatment facility in accordance with attached letter of referral dated September 14, 2021 from Charito Alley PA-C, bates stamped as**

**PLF PRODUCTION 0001138.**

16. Please identify all persons whom you believe to have any knowledge or information regarding the existence and/or amount of any of your alleged damages, whether they are physicians, psychologists, therapists, accountants, economists or otherwise.

**ANSWER:**

Plaintiff provided the names and information of such individuals in her initial disclosures provided under Fed. R. Civ. P. 26. Please also see Plaintiff's response to Interrogatory No. 3.

**SUPPLEMENTAL RESPONSE: See attached letter of referral dated September 14, 2021 from Charito Alley PA-C, bates stamped as PLF PRODUCTION 0001138. Damages to be provided after competition of treatment at in-treatment facility.**

PATTEN, WORNOM, HATTEN, & DIAMONSTEIN, L.C.

By: /Duncan G. Byer/____________________________

Duncan G. Byers, Esq.
(*Pro Hac Vice)* Virginia Bar No. 48146
Andrew J. Dean, Esq.
Florida Bar No. 121808
Virginia Bar No. 88192
PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.
12350 Jefferson Avenue, Ste 300
Newport News, VA 23602
Email: dbyers@pwhd.com
adean@pwhd.com
Tel: (757) 223-4500
Fax: (757) 249-1627
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify the on this 15th day of September 2021, I served the above document via email to the following:

William Spivey, II, Esquire
Colin S. Baker, Esquire
GREENBERG TRAURIG, P.A.
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909
Email: spiveyw@gtlaw.com
bakerco@gtlaw.com
nef-iws@gtlaw.com
FLService@gtlaw.com
*Counsel Defendant Bryan Cole*

/Duncan G. Byers/
Duncan G. Byers, Esquire
Virginia Bar No. 48146
Andrew J. Dean, Esq.
Florida Bar No. 121808
Virginia Bar No. 88192
PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.
12350 Jefferson Avenue, Ste 300
Newport News, VA 23602
Email: dbyers@pwhd.com
adean@pwhd.com
Tel: (757) 223-4500
Fax: (757) 249-1627
*Counsel for Plaintiff*